IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

FILED
U.S. DISTRICT COURT

2008 JUL 17 PM 2: 45

CLERK  C Adams
SO. DIST. OF GA.

| | |
|---|---|
| JOSE MARCIAL REYES-FUENTES; JOSE ROSALINO ANTONIO-CANDELARIA; FRAY TOMAS ELOTLAN-MUNGUIA; MOISES MENESES-TELLEZ; MARCELO MORQUECHO-SUAREZ; AURELIO PEDRAZA-PALACIOS; BONIFACIO ROJAS-ROJAS; FILEMON RUBIO-DELGADO; NOE RUBIO-RUBIO; JESUS SANTOS-QUIJANO; MAXIMINO VALLEJO-GONZALEZ; NICOLAS VELASQUEZ-VASQUEZ; HIPOLITO VIRGEN-PALACIOS; and OSCAR ROJAS-VASQUEZ,<br><br>       Plaintiffs,<br><br>v.<br><br>SHANNON PRODUCE FARM, INC.; JAMES G. SHANNON, JR. and RICARDO GASPAR, individually; and JAMES G. SHANNON, JR., JAMES G. SHANNON, SR., and CYNTHIA SHANNON, as alter egos of Defendant SHANNON PRODUCE FARM, INC.,<br><br>       Defendants. | CIVIL ACTION NO.<br><br>CV608 059 |

## COMPLAINT

### I. PRELIMINARY STATEMENT

1.    This Complaint sets forth claims for retaliation by fourteen migrant agricultural workers who, along with sixty-six of their co-workers, sued their employers for unpaid wages and contract violations in *Morales-Arcadio v. Shannon Produce Farm, Inc.,* Civil Action No. 6:05-CV-062 (BAE).

2.    Defendants, in retaliation for the plaintiffs' participation in the lawsuit, changed their seasonal employment practices and did not employ any of the eighty *Morales-Arcadio* plaintiffs

in subsequent work seasons.

3.       The fourteen Plaintiffs, who had harvested grapes on Defendants' Screven County farm in previous seasons, sought to return for the 2006 and/or 2007 seasons, while the *Morales-Arcadio* lawsuit was pending, and again for the 2008 season, after the lawsuit had settled. However, Defendants did not employ them, or any other worker who had participated in the lawsuit. Instead, Defendants employed workers who had worked in past seasons but had not sued them, as well as new, inexperienced workers.

4.       Plaintiffs Jose Marcial Reyes-Fuentes, Jose Rosalino Antonio-Candelaria, Fray Tomas Elotlan-Munguia, Moises Meneses-Tellez, Marcelo Morquecho-Suarez, Aurelio Pedraza-Palacios, Bonifacio Rojas-Rojas, Noe Rubio-Rubio, Maximino Vallejo-Gonzalez, Nicolas Velasquez-Vasquez, Hipolito Virgen- Palacios, and Oscar Rojas-Vasquez complain that Defendants retaliated against them by denying them employment for the 2006 harvest season.

5.       Plaintiffs Jose Marcial Reyes-Fuentes, Fray Tomas Elotlan-Munguia, Moises Meneses-Tellez, Bonifacio Rojas-Rojas, Filemon Rubio-Delgado, and Jesus Santos-Quijano complain that Defendants retaliated against them by denying them employment for the 2007 harvest season.

6.       Plaintiffs Jose Marcial Reyes-Fuentes, Jose Rosalino Antonio-Candelaria, Fray Tomas Elotlan-Munguia, Moises Meneses-Tellez, Marcelo Morquecho-Suarez, Bonifacio Rojas-Rojas, Noe Rubio-Rubio, Jesus Santos-Quijano, and Nicolas Velasquez-Vasquez complain that Defendants retaliated against them by denying them employment for the 2008 harvest season.

7.       Plaintiffs file this suit to secure and vindicate their rights under the anti-retaliation provision of the Fair Labor Standards Act ("FLSA").

8.       Plaintiffs seek a court order requiring Defendants to re-employ them and cease retaliating

2

or otherwise discriminating against any participant in the *Morales-Arcadio* litigation, a declaratory judgment, pre- and post-judgment interest, and other relief permitted by 29 U.S.C. § 216(b).

## II.   JURISDICTION AND VENUE

9.      The Court has jurisdiction over this action pursuant to:

        (a)      28 U.S.C. § 1331 (Federal Question);

        (b)      29 U.S.C. § 1337 (Interstate Commerce); and

        (c)      29 U.S.C. §§ 216(b); 215(a)(3) (FLSA).

10.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and S.D. Ga. Local Rule 2.1(a), because Plaintiffs' claims arose in the Southern District of Georgia and because Defendants reside there.

11.     This Court is empowered to grant declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202.

12.     The Court is empowered to grant injunctive relief pursuant to 29 U.S.C. § 216(b).

## III.   PARTIES

13.     Plaintiffs are former H-2A agricultural guestworkers ("H-2A workers") who were admitted to the United States to work legally for Defendants pursuant to labor certifications obtained by Defendants through the federal H-2A visa program, 8 U.S.C. § 1188 and 20 C.F.R. §§ 655.0 – 655.113.

14.     Plaintiff Jose Marcial Reyes-Fuentes worked for Defendants in 2000, 2001, 2002, 2003, 2004, and 2005.

15.     Plaintiff Reyes-Fuentes sought employment for the 2006, 2007, and 2008 seasons.

3

16.     Defendants accepted Plaintiff Reyes-Fuentes for return in 2006 and 2007, but never ultimately employed him.

17.     Defendants rejected Plaintiff Reyes-Fuentes in 2008.

18.     Plaintiff Jose Rosalino Antonio-Candelaria worked for Defendants in 2003 and 2004.

19.     Plaintiff Antonio-Candelaria sought employment for the 2006 and 2008 seasons.

20.     Defendants rejected Plaintiff Antonio-Candelaria in 2006 and 2008.

21.     Plaintiffs Fray Tomas Elotlan-Munguia and Moises Meneses-Tellez worked for Defendants in 2002, 2003, and 2005.

22.     Plaintiffs Elotlan-Munguia and Meneses-Tellez sought employment for the 2006, 2007, and 2008 seasons.

23.     Defendants accepted Plaintiffs Elotlan-Munguia and Meneses-Tellez for return in 2006 and 2007, but never ultimately employed them.

24.     Defendants rejected Plaintiffs Elotlan-Munguia and Meneses-Tellez in 2008.

25.     Plaintiff Marcelo Morquecho-Suarez worked for Defendants in 2002, 2004, and 2005.

26.     Plaintiff Morquecho-Suarez sought employment for the 2006 and 2008 seasons.

27.     Defendants accepted Plaintiff Morquecho-Suarez for return in 2006, but never ultimately employed him.

28.     Defendants rejected Plaintiff Morquecho-Suarez in 2008.

29.     Plaintiff Aurelio Pedraza-Palacios worked for Defendants in 2002, 2003, 2004, and 2005.

30.     Plaintiff Pedraza-Palacios sought employment for the 2006 season.

31.     Defendants accepted Plaintiff Pedraza-Palacios for return in 2006, but never ultimately employed him.

4

32.     Plaintiff Bonifacio Rojas-Rojas worked for Defendants in 2003.

33.     Plaintiff Rojas-Rojas sought employment for the 2006, 2007, and 2008 seasons.

34.     Defendants rejected Plaintiff Rojas-Rojas in 2006, 2007, and 2008.

35.     Plaintiff Filemon Rubio-Delgado worked for Defendants in 2002, 2003, 2004, and 2005.

36.     Plaintiff Rubio-Delgado sought employment for the 2007 season.

37.     Defendants rejected Plaintiff Rubio-Delgado in 2007.

38.     Plaintiff Noe Rubio-Rubio worked for Defendants in 2001, 2002, 2003, 2004, and 2005.

39.     Plaintiff Rubio-Rubio sought employment for the 2006 and 2008 seasons.

40.     Defendants accepted Plaintiff Rubio-Rubio for return in 2006, but never ultimately
employed him.

41.     Defendants rejected Plaintiff Rubio-Rubio in 2008.

42.     Plaintiff Jesus Santos-Quijano worked for Defendants in 2004.

43.     Plaintiff Santos-Quijano sought employment for the 2007 and 2008 seasons.

44.     Defendants accepted Plaintiff Santos-Quijano for return in 2007, but never ultimately
employed him.

45.     Defendants rejected Plaintiff Santos-Quijano in 2008.

46.     Plaintiff Maximino Vallejo-Gonzalez worked for Defendants in 2001, 2002, 2003, 2004,
and 2005.

47.     Plaintiff Vallejo-Gonzalez sought employment for the 2006 season.

48.     Defendants accepted Plaintiff Vallejo-Gonzalez for return in 2006, but never ultimately
employed him.

49.     Plaintiff Nicolas Velasquez-Vasquez worked for Defendants in 2004 and 2005.

50.     Plaintiff Velasquez-Vasquez sought employment for the 2006 and 2008 seasons.

51.     Defendants accepted Plaintiff Velasquez-Vasquez for return in 2006, but never ultimately employed him.

52.     Defendants rejected Plaintiff Velasquez-Vasquez in 2008.

53.     Plaintiffs Hipolito Virgen-Palacios and Oscar Rojas-Vasquez worked for Defendants in 2005.

54.     Plaintiffs Virgen-Palacios and Rojas-Vasquez sought employment for the 2006 season.

55.     Defendants accepted Plaintiffs Hipolito Virgen-Palacios and Oscar Rojas-Vasquez for return in 2006, but never ultimately employed them.

56.     At all times relevant to this action, Defendant Shannon Produce Farm, Inc. ("Shannon Produce") was a corporation in good standing duly formed under and in accordance with the laws of the State of Georgia.  Shannon Produce may be served with process through its registered agent, James G. Shannon, Sr., at 299 Racehorse Road, Sylvania, Georgia 30467.

57.     Defendant James G. Shannon, Jr. ("Shannon, Jr.") is the Chief Executive Officer, President and 40% owner of Shannon Produce.

58.     Defendant Shannon, Jr. resides at 299 Racehorse Road, Sylvania, Georgia, 30467.

59.     Defendant James G. Shannon, Sr. ("Shannon, Sr.") is the Vice President and 40% owner of Shannon Produce.

60.     Defendant Shannon, Sr. resides at 299 Racehorse Road, Sylvania, Georgia, 30467.

61.     Defendant Cynthia Shannon is the Secretary, Treasurer, and 20% owner of Shannon Produce.

62.     Defendant Cynthia Shannon resides at 299 Racehorse Road, Sylvania, Georgia, 30467.

63.     Defendant Ricardo Gaspar is a supervisor and manager at Shannon Produce.

64.     Defendant Gaspar resides at 672 Poor Robin Road, Sylvania, Georgia, 30467.

65.     At all times relevant to this action, Defendants were engaged in the packing and production of fruit in the Screven County area for sale in interstate commerce.

66.     Defendants Shannon, Jr., Shannon, Sr., and Cynthia Shannon are liable for the acts of Defendant Shannon Produce as the corporation's alter egos, because they have disregarded the corporate entity, commingled corporate and personal assets, and used the corporation as a mere instrumentality for the transaction of their own affairs.

67.     Defendant Shannon Produce pays personal bills of Defendants Shannon, Jr., Shannon, Sr., and Cynthia Shannon.

68.     Defendant Shannon, Jr. has transferred funds from Shannon Produce's operating loan to his personal bank account.

69.     Defendants Cynthia Shannon and Shannon, Jr. pay the bills of Defendant Shannon Produce from their personal bank accounts.

70.     Defendant Shannon Produce has insignificant financial assets of its own.

71.     There is such unity of interest and ownership that the separate personalities of Defendants Shannon Produce, Shannon, Jr., Shannon, Sr., and Cynthia Shannon no longer exist, and to adhere to the doctrine of corporate entity would defeat justice, perpetuate fraud, evade contractual responsibility, and/or confuse or avoid judgment creditors.

IV.  THE "H-2A PROGRAM": REGULATIONS AND RECRUITMENT

72.     An agricultural employer in the United States may import temporary foreign workers ("H-2A workers") if the United States Department of Labor ("US DOL") certifies that there are

7

insufficient U.S. workers to perform the job and the employment of H-2A workers will not adversely affect the wages and working conditions of U.S. workers who are similarly employed. 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) and 1188(a)(1). These provisions, along with the implementing federal regulations, are commonly referred to as the "H-2A program."

73.     An employer requesting H-2A workers must file a temporary labor certification application, known as a "job order," with the appropriate US DOL Regional Administrator. 20 C.F.R. §§ 655.101(a)(1) and (b)(1).

74.     As part of the employer's application, the employer must agree not to retaliate against, intimidate, threaten, restrain, coerce, blacklist, discharge, or in any way discriminate against workers who have instituted any proceeding related to the H-2A program regulations or consulted with an attorney or legal services program about the H-2A regulations. 20 C.F.R. § 655.103(g).

75.     If the US DOL determines that the employer's application meets federal regulatory requirements and that sufficient U.S. workers are not available, it certifies the need for temporary foreign workers, and the U.S. Department of Homeland Security authorizes the number of H-2A visas sought by the employer.

76.     In order for visas to be issued to prospective H-2A workers, the United States Consulate in Mexico requires that the agricultural employer fax a list of workers to be hired, signed by the employer, directly to the Consulate, which interviews each worker on the list and issues an H-2A visa.

77.     Workers not on the employer's list cannot be employed, as they are not interviewed or issued a visa, and thus are not permitted to enter the United States.

## V.  STATEMENT OF FACTS

78.     On July 11, 2005, fourteen H-2A workers employed by Defendants, including Plaintiff

Jose Rosalino Antonio-Candelaria named in this Complaint, filed a lawsuit in this Court,

*Morales-Arcadio v. Shannon Produce Farm, Inc.*, Civil Action No. 6:05-CV-062 (BAE),

alleging, *inter alia*, that Defendants Shannon Produce, Shannon, Jr., and Shannon, Sr. had

violated their rights under the FLSA and their H-2A employment contracts.

79.     The *Morales-Arcadio* complaint was served on Defendants by mail on July 18, 2005, at

the beginning of the 2005 harvest season.

80.     Over the course of the 2005 season and between the 2005 and 2006 seasons, a total of

sixty-six additional H-2A workers, including the remaining thirteen Plaintiffs named in this

Complaint, joined the *Morales-Arcadio* lawsuit.

81.     By approximately June 14, 2006, before the 2006 season began, Defendants had received

notice of the names of all workers who had joined the *Morales-Arcadio* lawsuit.

82.     Defendants' harvest season typically begins each year in mid to late July or early August

and ends in November of the same year.

83.     Defendants stagger their harvest hiring, typically hiring workers in two groups.

84.     Defendants submit two lists of workers' names to the U.S. Consulate for processing, and

H-2A workers typically arrive at the farm in two groups, approximately a month apart.

85.     Prior to 2005, Defendants used recruiters Rafael Jacome, Carmen Contreras, and

Defendant Ricardo Gaspar to identify potential H-2A workers whose names Defendants would

submit to the U.S. Consulate.

86.     These recruiters provided H-2A workers to Defendants from the Mexican states of San

Luis Potosí, Michoacán, Puebla, Morelos, Veracruz, and Hidalgo.

87.     Prior to 2005, Defendants' H-2A workforce from these states was relatively consistent, with many workers continuously employed season after season.

88.     Upon information and belief, in late July or August 2005, Defendants requested that their H-2A agent, Dan Bremer and the employees of AgWorks, Inc., and/ or their visa processing agent, Ricardo "Richie" Rodriguez and the employees of Solstice, International, locate workers in other parts of Mexico for Defendants' future hiring.

89.     On or around August 30, 2005, Defendants began using a new recruiter, Alfonso Chavez.

90.     Using Mr. Chavez, Defendants began employing new H-2A workers from the Mexican state of Durango, an area from which they had never previously recruited and where none of the *Morales-Arcadio* plaintiffs lived.

91.     In September 2005, the U.S. Consulate stopped processing Defendants' H-2A visa requests for the remainder of the 2005 season.

## 2006 SEASON

92.     For the 2006 season, Defendant Shannon Produce filed a job order on May 31, 2006 requesting 95 H-2A workers. The job order, numbered GA 7494234, listed the dates of employment as July 17, 2006 to November 15, 2006. A copy of this job order is attached as Exhibit A to this Complaint.

93.     In June and July 2006, Plaintiffs Jose Marcial Reyes-Fuentes, Fray Tomas Elotlan-Munguia, Aurelio Pedraza-Palacios, Maximino Vallejo-Gonzalez, and Hipolito Virgen-Palacios contacted the farm directly and/ or recruiter Rafael Jacome to express their desire to return to work for Defendants.

10

94.     By the start date of the 2006 season, July 17, 2006, no plaintiff from the *Morales-Arcadio*
lawsuit had been offered employment by Defendants.

95.     Defendants did re-employ H-2A workers for the 2006 season who had worked in
previous seasons, but who did not participate in the *Morales-Arcadio* litigation.

96.     Defendants also employed new H-2A workers who had never worked for Defendants
before.

97.     In late July and early August 2006, Plaintiffs' counsel wrote to Defendants' counsel,
stating concerns about retaliation and identifying the Plaintiffs named in ¶ 4 who sought
employment for the 2006 season.

98.     In a series of letters in August and September 2006, Defendants' counsel stated that
Defendants would place only Plaintiffs Jose Marcial Reyes-Fuentes, Fray Tomas Elotlan-
Munguia, Moises Meneses-Tellez, Marcelo Morquecho-Suarez, Aurelio Pedraza-Palacios, Noe
Rubio-Rubio, Maximino Vallejo-Gonzalez, Nicolas Velasquez-Vasquez, Hipolito Virgen-
Palacios, and Oscar Rojas-Vasquez on the list to be sent to the U.S. Consulate.

99.     In reliance on this promise, the Plaintiffs listed in the immediately preceding paragraph
began making preparations to travel to Defendants' farm for work, including purchasing new
passports.

100.    According to a letter from Defendants' counsel, the reason for the rejection of the
remaining workers named in ¶ 4, Jose Rosalino Antonio-Candelaria and Bonifacio Rojas-Rojas,
was because they had not worked for Defendants "for a couple of years" or had left before the
end of the season.

101.    On October 5, 2006, Defendants' counsel informed Plaintiffs' counsel that Defendants

would not employ any of the Plaintiffs named in ¶ 4 for the 2006 season.

102.    Defendants knew that the Plaintiffs listed in ¶ 4 desired to return to work in 2006.

103.    Defendants did not employ any of the Plaintiffs named in ¶ 4 for the 2006 season.

## 2007 SEASON

104.    For the 2007 season, Defendant Shannon Produce filed a job order on May 22, 2007
requesting 92 H-2A workers. The job order, numbered GA 7494234, listed the dates of
employment as July 15, 2007 to November 1, 2007. A copy of this job order is attached as
Exhibit B to this Complaint.

105.    In late June and early July 2007, Plaintiffs' counsel wrote two letters and two emails to
Defendants' counsel listing the Plaintiffs named in ¶ 5 who sought employment for the 2007
season.

106.    In late June 2007, as part of *Morales-Arcadio* settlement discussions, Plaintiffs' counsel
also requested the re-employment of the Plaintiffs as a non-monetary term. Defendants rejected
this term.

107.    By the start date of the 2007 season, July 15, 2007, no plaintiff from the *Morales-Arcadio*
lawsuit had been offered employment by Defendants.

108.    Defendants did re-employ H-2A workers for the 2007 season who had worked in
previous seasons, but who did not participate in the *Morales-Arcadio* litigation.

109.    Defendants also employed new H-2A workers who had never worked for Defendants
before.

110.    On or around August 3, 2007, Defendant James Shannon, Jr. forwarded the names of
Plaintiffs Jose Marcial Reyes-Fuentes, Fray Tomas Elotlan-Munguia, Moises Meneses-Tellez,

12

and Jesus Santos-Quijano by letter to Defendants' H-2A recruitment and visa processing agent, Solstice International, stating that these workers were interested in positions at the farm.

111.    Defendants did not add the Plaintiffs listed in the immediately preceding paragraph to the list of workers to be hired that was signed and sent to the U.S. Consulate.

112.    Defendants' counsel stated by letter that the remaining Plaintiffs listed in ¶ 5, Bonifacio Rojas-Rojas and Filemon Rubio-Delgado, would not be employed because they had not worked for the farm "for many seasons" or had quit before the completion of the season.

113.    Defendants knew that the Plaintiffs listed in ¶ 5 desired to return to work in 2007.

114.    Defendants did not employ any of the Plaintiffs named in ¶ 5 for the 2007 season.

2008 SEASON

115.    For the 2008 season, Defendant Shannon Produce filed a job order on June 17, 2008 requesting 60 H-2A workers. The job order, numbered GA 7698549, listed the dates of employment as August 4, 2008 to September 18, 2008. A copy of this job order is attached as Exhibit C to this Complaint.

116.    On June 27, 2008, as part of continuing *Morales-Arcadio* settlement discussions, Plaintiffs again requested the re-employment of Plaintiffs. Defendants rejected this term.

117.    On July 3, 2008, Plaintiffs' counsel wrote a letter to Defendants' counsel listing the Plaintiffs named in ¶ 6 who sought employment for the 2008 season.

118.    Defendants responded by letter that they would not employ any of the Plaintiffs named in ¶ 6 for employment for the 2008 season.

119.    Defendants knew that the Plaintiffs listed in ¶ 6 desired to return to work in 2008.

120.    Defendants have at all times relevant to this action had the power to place H-2A workers'

13

names on or remove names from the lists they submit to the United States Consulate.

121.    Upon information and belief, Defendant James Shannon, Jr. personally signed the list of workers' names submitted to the U.S. Consulate in 2006, 2007, and 2008.

## COUNT I

### FLSA Retaliation

122.    Plaintiffs incorporate ¶¶ 1-121 by reference.

123.    This count sets forth a claim by all Plaintiffs for actual and liquidated damages and declaratory and injunctive relief for violations of the FLSA's anti-retaliation provision, 29 U.S.C. § 215(a)(3), by Defendants Shannon Produce, Shannon, Jr., and Ricardo Gaspar.

124.    Defendants Shannon, Jr., Shannon, Sr., and Cynthia Shannon are further liable under this count as the alter egos of corporate Defendant Shannon Produce.

125.    Plaintiffs Jose Marcial Reyes-Fuentes, Jose Rosalino Antonio-Candelaria, Fray Tomas Elotlan-Munguia, Moises Meneses-Tellez, Marcelo Morquecho-Suarez, Aurelio Pedraza-Palacios, Bonifacio Rojas-Rojas, Noe Rubio-Rubio, Maximino Vallejo-Gonzalez, Nicolas Velasquez-Vasquez, Hipolito Virgen- Palacios, and Oscar Rojas-Vasquez assert this count for the 2006 season.

126.    Plaintiffs Jose Marcial Reyes-Fuentes, Fray Tomas Elotlan-Munguia, Moises Meneses-Tellez, Bonifacio Rojas-Rojas, Filemon Rubio-Delgado, and Jesus Santos-Quijano assert this count for the 2007 season.

127.    Plaintiffs Jose Marcial Reyes-Fuentes, Jose Rosalino Antonio-Candelaria, Fray Tomas Elotlan-Munguia, Moises Meneses-Tellez, Marcelo Morquecho-Suarez, Bonifacio Rojas-Rojas, Noe Rubio-Rubio, Jesus Santos-Quijano, and Nicolas Velasquez-Vasquez assert this count for

14

the 2008 season.

128.    Plaintiffs engaged in protected activity by filing or joining the *Morales-Arcadio* lawsuit.

129.    Plaintiffs suffered adverse employment action by losing employment with Defendants in the 2006, 2007, and/or 2008 seasons.

130.    Plaintiffs' loss of employment was causally connected to their protected activity, and Defendants' proffered explanations are a pretext for retaliation.

131.    As a result of Defendants' violations of the FLSA set forth in this count, Plaintiffs seek an injunction requiring Defendants to re-employ them and cease retaliating or otherwise discriminating against any participant in *Morales-Arcadio*.

132.    Each Plaintiff also seeks the amount of his unpaid wages and an equal amount of liquidated damages pursuant to 29 U.S.C. § 216(b), as well as pre- and post-judgment interest.

        WHEREFORE, Plaintiffs respectfully request that this Court grant them the following relief:

    a.    Declare that Defendants have violated the FLSA as specified above;

    b.    Grant injunctive relief in the form of an order requiring Defendants to re-employ the Plaintiffs and cease retaliating or otherwise discriminating against any participant in *Morales-Arcadio*;

    c.    Grant judgment against Defendants, jointly and severally, and in favor of each Plaintiff in the amount of each Plaintiff's respective unpaid wages as proved at trial, plus an equal amount of liquidated damages, pursuant to 29 U.S.C. § 216(b);

    d.    Grant judgment against Defendants Shannon, Jr., Shannon, Sr., and Cynthia Shannon, jointly and severally, as the alter egos of the corporate Defendant

15

Shannon Produce;

e.    Award Plaintiffs pre- and post-judgment interest;

f.    Cast all costs upon Defendants; and

g.    Award Plaintiffs such further relief, at law or in equity, as this Court deems just

      and proper.

Respectfully submitted this 17th day of July, 2008,

*Charlotte Sanders*

Charlotte Sanders, *Lead Counsel*
Georgia Bar No. 435174
Dawson Morton
Georgia Bar No. 525985
Lisa J. Krisher
Georgia Bar No. 429762
Georgia Legal Services, Farmworker Division
104 Marietta St., Suite 250
Atlanta, Georgia 30303
Tel.: 404-463-1633
Fax: 404-463-1623

William J. Cobb
Georgia Bar No. 171850
Cobb & Gardner LLP
755 Commerce Drive, Suite 800
Decatur, GA 30030
Tel.: 404-601-4120
Fax: 404-601-4133

ATTORNEYS FOR PLAINTIFFS

# Exhibit A

Agricultural and Food Processing
Clearance Order    *O6-W-21*

**U.S. Department of Labor**
Employment and Training Administration

**READ CAREFULLY:** In view of the statutorily established basic function of the employment service as a no-fee labor exchange, that is, as a forum for bringing together employers and job seekers, neither ETA nor the State agencies are guarantors of the accuracy or truthfulness of information contained on job orders submitted by employers. Nor does any job order accepted or recruited upon by the JS constitute a contractual job offer to which the ETA or a State agency is in any way a party.

*HIR 6/8/06*

OMB Approval No. 1205-0134

| 1. Industry Code | 2. Job Order Number |
|---|---|
| *0172* | *6A 7494234* |

3. Occupational Title and Code *403-687-018*
*Harvestworker fruit*

**4. Employer's Name and Address** (Number, Street, City, State, Zip Code, and Telephone Number)

SHANNON PRODUCE FARM, INC.

299 RACEHORSE ROAD

SYLVANIA        GA  30467        (912) 857-3876

**5. Anticipated Period of Employment**
From: 07/*19*/2006    *(TOS)*    To: 11/15/2006

**6. Clearance Order Issue Date** *6/7/06*

Job Order Expiration Date *9/16/06*

| 7. Preferred Crew Leader/Worker's Name and Address | Social Security Number | Leader's Functions | | | 8. No. Type of Workers Requested |
|---|---|---|---|---|---|
| | | | Yes | No | |
| | | Supervises | ☐ | ☑ | Total Number __95__ |
| | Telephone Number | Transports | ☐ | ☑ | No. Individual __95__ |
| | | Pays | ☐ | ☑ | |
| | | Assumes OASI | ☐ | ☑ | No. Family __0__ |

**9. Wage Rates, Special Pay Information and Deductions**

| Crop Activity | Flat Rate (i.e., hr. wk.) | Piece Rate | Unit | Est. Hourly Rate Equiv. | C/L Wage Rate |
|---|---|---|---|---|---|
| Harvesting Grapes | 8.37/Hourly | 1.50 | Pound/20 unit | 8.37 | |
| Packing Grapes | 8.37/Hourly | 0.07 | Quart Bucket | 8.37 | |
| Harvesting Persimm | 8.37/Hourly | 1.00 | Pound/20 | 8.37 | |

(See attachment no. _____ )

**10. Anticipated Hrs. of Work Per Week __40__**

| Normal Hours Per Day | Sun | 0 | Thu | 7 |
|---|---|---|---|---|
| | Mon | 7 | Fri | 7 |
| | Tue | 7 | Sat | 5 |
| | Wed | 7 | | |

**11. Job Specifications** (If additional space is needed, please use separate sheet of paper or reverse of form)

Harvest, grade and field pack grapes; repack grapes; harvest and field pack persimmon; vineyard maintenance; farm vehicle equipment operation and minor maintenance; and farm, camp, field and shed sanitation duties.

(See attachment no. ____ 3-H ____ )

**12. Location and Direction to Work Site**
299 RACEHORSE ROAD, SYLVANIA, GEORGIA
See Attached

(See attach. no. _____ )

**13. Board Arrangements**
See Attached

(See attach. no. __1-B__ )

**14. Location and Description of Housing**
See Attached
2 barracks type units

Employer assures the availability of no cost or public housing which meets the full set of applicable standards.    (See attach. no. _____ )

Number and Capacity of Housing Units

| | Barracks | | Family Units | | Single Rooms | |
|---|---|---|---|---|---|---|
| | No. | Total Cap. | No. | Total Cap. | No. | Total Cap. |
| | 2 | 95 | 0 | 0 | 0 | 0 |

Authorized Capacity    95

**15. Referral Instructions**
Fax referral forms to AgWorks, Inc. (229) 559-6563

(See attach. no. __3-I__ )

**16. Collect Calls Accepted**

| | Yes | No |
|---|---|---|
| By Employer | ☐ | ☑ |
| by Order Holding Office | ☐ | ☐ |

**17. Transportation Arrangements**
See Attached

(See attach. no. __1-F__ )

**18. Distribution of Clearance Order**

**19. Address of Order Holding Office** (including Telephone Number)

**20. Employer's Certification:** This job order describes the actual terms and conditions of the employment being offered by me and contains all the material terms and conditions of the job.

Signature *[signature]*

Title *President*

Name of Agency Representative (including Telephone Number)
AGWORKS, INC.        (229)559-6879

Replaces Form MA 7-90 which is obsolete

ETA Case Number A-06132-01497

ETA 790 (R. Jan 1981)

OMB Approval No. 44-R1301

U.S. DEPARTMENT OF LABOR
Employment and Training Administration

## APPLICATION
## FOR
## ALIEN EMPLOYMENT CERTIFICATION

**IMPORTANT: READ CAREFULLY BEFORE COMPLETING THIS FORM**
PRINT legibly in ink or use a typewriter. If you need more space to answer questions in this form, use a separate sheet. Identify each answer with the number of the corresponding question. SIGN AND DATE each sheet in original signature.
To knowingly furnish any false information in the preparation of this form and any supplement thereto or to aid, abet, or counsel another to do so is a felony punishable by $10,000 fine or 5 years in the penitentiary, or both (18 U.S.C. 1001).

### PART A. OFFER OF EMPLOYMENT

1. Name of Alien   (Family name in capital letter, First, Middle, Maiden)

2. Present Address of Alien   (Number, Street, City and Town, State ZIP code or Province, Country)

3. Type of Visa   (If in U.S.)

The following information is submitted as an offer of employment.

4. Name of Employer   (Full name of Organization)

SHANNON PRODUCE FARM, INC.

5. Telephone
**(912) 857-3876**

6. Address   (Number, Street, City and Town, State ZIP code)

299 RACEHORSE ROAD

SYLVANIA                    GA            30467

7. Address Where Alien Will Work   (if different from item 6)

8. Nature of Employer's Business Activity

9. Name of Job Title
*Harvest Worker*
~~FARMWORKER~~, FRUIT

10. Total Hours Per Week
a. Basic  **40**
b. Overtime

11. Work Schedule
(Hourly)
7:00 a.m.
3:00 p.m.

12. Rate of Pay
a. Basic  $ 8.37 per Hourly
b. Overtime  $ per hour

13. Describe Fully the job to be Performed   (Duties)

Harvest, grade and field pack grapes; repack grapes; harvest and field pack persimmon; vineyard maintenance; farm vehicle equipment operation and minor maintenance; and farm, camp, field and shed sanitation duties.

14. State in detail the MINIMUM education, training, and experience for a worker to perform satisfactorily the job duties described in item 13 above.

| EDU-CATION (Enter number of years) | Grade School | High School | College | College Degree Required   (specify) |
|---|---|---|---|---|
| | | | | Major Field of Study |

| TRAIN-ING | No. Yrs. **0** | No. Mos. **0** | Type of Training **0** |
|---|---|---|---|

| EXPERI-ENCE | Job Offered | | Related Occupation Number | | Related Occupation   (specify) **0** |
|---|---|---|---|---|---|
| | Yrs. **0** | Mos. **0** | Yrs. **0** | Mos. **0** | |

15. Other Special Requirements

Work is outside.  Prolonged bending and reaching.

16. Occupational Title of Person Who Will Be Alien's Immediate Supervisor   ▶   **FOREPERSON**

17. Number of Employees Alien Will Supervise   ▶   0

◀ ENDORSEMENTS   (Make no entry in section - for Government use only)

| Date Forms Received | |
|---|---|
| L.O. | S.O. |
| R.O. | N.O. |
| Ind. Code | Occ. Code |
| Occ. Title | |

Replaces MA 7-50A, B and C (Apr. 1970 edition) which is obsolete.

ETA 750 (Oct. 1979)

| 18. COMPLETE ITEMS ONLY IF JOB IS TEMPORARY | | | 19. IF JOB IS UNIONIZED (Complete) | | |
|---|---|---|---|---|---|
| a. No. of Openings To Be Filled By Aliens Under Job Offer | b. Exact Dates You Expect To Employ Alien | | a. Number of Local | b. Name of Local | |
| | From | To | | | |
| 95 | 07/19/2006 | 11/15/2006 | | c. City and State | |

**20. STATEMENT FOR LIVE-AT-WORK JOB OFFERS  (Complete for Private Household ONLY)**

| a. Description of Residence | b. No. Persons residing at Place of Employment | | | | c. Will free board and private room not shared with anyone be provided? | ("X" one) |
|---|---|---|---|---|---|---|
| ("X" one) | Number of Rooms | Adults | Children | Ages | | ☐ YES  ☐ NO |
| ☐ House | | | BOYS | | | |
| ☐ Apartment | | | GIRLS | | | |

**21. DESCRIBE EFFORTS TO RECRUIT U.S. WORKERS AND THE RESULTS.  (Specify Sources of Recruitment by Name)**

Ads have been placed in local papers.  Job orders have been placed with the State Employment Service for the past several years that have been distributed statewide and nationally through U.S. DOL's internet system.  Notices have been placed locally in establishments frequented by potential workers.  Word of mouth has been used extensively.  None of these methods has produced results adequate to sustain our production during the peak harvest season.  These recruitment efforts will be continued.

**22.** Applications require various types of documentation.  Please read Part II of the Instructions to assure that appropriate supporting documentation is included with your application.

**23. EMPLOYER CERTIFICATIONS**

By virtue of my signature below, I HEREBY CERTIFY the following conditions of employment.

a. I have enough funds available to pay the wage or salary offered the alien.

b. The wage offered equals or exceeds the prevailing wage and I guarantee that, if a labor certification is granted, the wage paid to the alien when the alien begins work will equal or exceed the prevailing wage which is applicable at the time the alien begins work.

c. The wage offered is not based on commissions, bonuses, or other incentives, unless I guarantee a wage paid on a weekly, bi-weekly, or monthly basis.

d. I will be able to place the alien on the payroll on or before the date of the alien's proposed entrance into the United States.

e. The job opportunity does not involve unlawful discrimination by race, creed, color, national origin, age, sex, religion, handicap, or citizenship.

f. The job opportunity is not:

(1) Vacant because the former occupant is on strike or is being locked out in the course of a labor dispute involving a work stoppage.

(2) At issue in a labor dispute involving a work stoppage.

g. The job opportunity's terms, conditions and occupational environment are not contrary to Federal, State or local law.

h. The job opportunity has been and is clearly open to any qualified U.S. worker.

**24. DECLARATIONS**

| DECLARATION OF EMPLOYER | Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury the foregoing is true and correct. | |
|---|---|---|
| SIGNATURE | | DATE  5-31-2006 |
| NAME (Type or Print)  JAMES SHANNON, JR. | TITLE  PRESIDENT | |
| AUTHORIZATION OF AGENT OF EMPLOYER | I HEREBY DESIGNATE the agent below to represent me for the purposes of labor certification and I TAKE FULL RESPONSIBILITY for accuracy of any representations made by my agent. | |
| SIGNATURE OF EMPLOYER | | DATE  5-31-2006 |
| NAME OF AGENT  (Type or Print)  AGWORKS,   INC. | ADDRESS OF AGENT (Number, Street, City, State, ZIP code)  POST OFFICE BOX 580          408 WEST MA  LAKE PARK          GA          31636 | |

Addendum

11. Job Specifications (If additional space is needed, please use separate sheet of paper or reverse of form)

12. Location and Direction to Work Site

From Sylvania, GA., take Hwy 21 south for approx. 7.5 miles to Hunters Road. Turn left on Hunters road for 3.3 miles to Racehorse, first farm on left.

13. Board Arrangements

Housing provided at no cost to workers not reasonably able to return to residence

14. Location and Description of Housing

on farm premise, 299 Racehorse Road, Sylvania, Georgia

15. Referral Instructions

17. Transportation Arrangements

Employer will reimburse the reasonable cost of transportation and subsistence

**FORM PENDING**
ETA Case Number  A-06132-01497

# CONDITIONAL ACCESS

This request for conditional access into the intrastate or interstate clearance system is made on behalf of Shannon Produce Farm, Inc., whose housing has not been inspected and found in compliance with applicable regulations and is made with the express understanding that the employer assumes the obligation under the applicable regulations for timely compliance with applicable housing standards.

If said housing is not ready on the applicable date, the workers will be housed in local hotels and motels.

SHANNON PRODUCE FARM, INC.

By: _____

Date: _____

COUNTIES OF OPERATION: Screven County, Georgia

DRIVING DIRECTIONS TO EMPLOYER'S OFFICE AND HOUSING: From Sylvania, take Hwy. 21 South 6 miles to Hunters Road. Turn left on Hunters Road and go 3.3 miles east then take a right on Racehorse Road, first farm on left.

**Attachment to ETA 790**
**Shannon Produce Farm, Inc.**
**(07/10/2006-11/15/2006) #95 WORKERS**

1.    **Contents of Job Offers and Assurances**
A.    **Equivalent Treatment of U.S. and Alien Workers**
The employer will offer U.S. workers at least the same opportunities, wages, benefits, and working conditions as those that the employer offers or intends to offer to non-immigrant foreign workers.

B.    **Housing**
Housing is provided at no cost to workers who are not reasonably able to return the same day to their place of residence. If said housing is not ready on the applicable date the workers will be housed in local hotels and motels. Housing is not provided to non-workers.  No charge will be made for beds or cooking utensils and similar items furnished to workers to whom housing is provided hereunder unless unlawfully removed or damaged beyond normal wear and tear. Housing includes free kitchen facilities. The kitchen and other common areas will be shared.  Housing provided will be shared without regard to sex.  Separate toilet facilities shall be provided by the employer for males and females.

Workers who reside in such housing agree to be responsible for maintaining the housing in a neat and clean manner.  Before occupancy, housing shall be in compliance with OSHA housing standards.  Workers residing in the housing will be responsible for maintaining the compliance standards as posted in the housing unit.   If there is a problem with the housing, it is the worker's responsibility to mention it to the employer.

Reasonable repair costs of damages or loss of property, other than that caused by normal wear and tear, will be deducted from the employee's pay if it is shown that the individual did the damages.  The employer will deduct repair costs from the employee's pay over whatever time period necessary so that such deductions will not result in a worker's wages going below the federal minimum wage.  The employer retains possession and control of the housing premises at all times and workers, if provided housing under the terms of the work contract, shall vacate the housing promptly upon termination of employment.

Workers residing in employer's housing may have mail directed to them at the employer's address on attached ETA 790. Workers will be provided a telephone number where they may be contacted in case of emergency while residing in the housing. The employer will not accept collect calls.

C.    **Workers' Compensation**
Workers' compensation or equivalent insurance will be provided at no cost to all workers in the occupation for which workers are being sought.  The employer's proof of insurance coverage will be provided to the Regional Administrator before certification is granted.  If the workers compensation policy expires before the end of the certification period, the employer will furnish an updated proof of insurance.

**D.    Employer Provided Items**

The employer will provide all supplies and equipment required in the performance of the specified work free of charge. The employer will charge the worker for reasonable cost related to the worker's refusal or negligent failure to return any property furnished by the employer or due to such worker's willful damage or destruction of such property.

**E.    Meals**

The employer will furnish free cooking and kitchen facilities to those workers who are entitled to live in the employer's housing, so the workers may prepare their own meals. Workers will buy their own groceries. Once a week, the employer will offer to those workers who wish to participate, free transportation to and from town where there are shopping stores, a post office and pay telephone. The Employer may provide meals and charge employee $9.30 per day. This is at the option of the Employer.

**F.    Transportation**

The employer will not advance transportation and subsistence costs to worker for transportation to the place of employment.    The employer will not repay transportation for workers that do not have legal, suitable documents to comply with IRCA, are discharged for lawful job-related reason, apply for employment knowingly unable to perform the job activities, or who abandon employment. This applies only to workers for whom the employer is legally obligated to supply housing.  This benefit is not applicable to local workers who are not eligible for employer-provided housing.

After fifty percent of the employment period is complete, the employer will reimburse the worker for reasonable cost of transportation and subsistence from the place of recruitment to the grower's location.

Upon completion of the employment period, the employer will pay for worker's reasonable cost of return transportation and subsistence to the place of recruitment, except when the worker will not be returning to the place of recruitment due to subsequent employment with another employer who agrees to pay such costs, the employer only pays for the transportation to the next job.

The amount of such transportation payment will be equal to the worker's actual transportation costs not to exceed the most economical and reasonable common carrier transportation charges for the distance involved. The employer reserves the right to charter or otherwise arrange transportation to the point of recruitment, or to offer any combination of payment, chartered and /or arranged transportation to the point of recruitment If the employer arranges transportation, and the worker does not use that transportation, the worker will be reimbursed only for the cost of the employer arranged transportation.    Employees eligible for reimbursement under the program will be provided subsistence reimbursement.

The employer will provide transportation and subsistence under this agreement to workers whose services are no longer required for reasons beyond the control

of the employer due to fire, hurricane, or other Act of God which makes fulfillment of the contract impossible, or if a worker is displaced by a U.S. worker under the 50 per cent rule. This benefit does not apply to workers who voluntarily quit employment before the end of the contract or who are terminated for cause. The employer will notify the Department of Labor if an employee is terminated for cause.

The employer will offer free transportation for workers from the employer's housing to the daily work site.  The use of the transportation by the worker is voluntary, and no worker will be required as a condition of employment to utilize the transportation offered by the employer.

## G.   Three-fourths Guarantee

The employer guarantees the worker an opportunity to work for at least three-fourths of the number of hours in the work days during the period of the contract and all amendments thereof are in effect.  The period of the contract is from the first work day after arrival of the worker (workers ready, willing, able and eligible to work) at the place of employment until the expiration date of the work contract. The offer of employment expires as of the date specified on the work contract and any extension.  For the purpose of the 3/4 guarantee, a workday consists of seven hours Monday-Friday and five hours on Saturday.

If the workers are not offered the opportunity to work for three-fourths of such hours during this period, then the employer will supplement the pay of the workers as though the worker had actually worked.  If the worker is paid on a piece rate or other similar incentive system, the worker's average hourly piece rate earning (if higher than the AEWR) will be used in determining the amount due under this guarantee.

If the employer fails to notify the order holding office at least 10 working days prior to the original date of need, the employer will provide workers referred through the Agricultural Recruitment System a full week's work (as stated on the ETA 790) the week beginning with the anticipated date of need.  For this situation, the employer will pay eligible workers referred through the interstate clearance system the AEWR for the first week starting with the original anticipated date of need.  However, the employer may require the workers to perform alternative work (general farm labor and maintenance activities) if the guarantee cited is invoked.  If the worker fails to notify the order holding office of continued interest in the job no sooner than nine working days and no later than five days before the date of need, the worker will be disqualified from the above mentioned assurance.

The three-fourths guarantee and transportation reimbursements shall be void from the beginning should the worker voluntarily abandon employment before the end of the contract period or the worker is terminated for a lawful job-related reason.

The three-fourths guarantee will not apply to any H-2A worker who may be displaced by a U.S. worker under the fifty-percent rule.

## H. Records, Earnings Statement and Deductions

The employer will keep and maintain adequate and accurate payroll and supporting records in accordance with the provisions of 20 CFR 655.102(b)(7). Each payday the employer will furnish to the worker one or more written statements showing name and payroll identification number; work starting and ending time; hours worked including hours offered and hours actually worked; reasons employee did not work when work was offered; hourly rate or piece rate (if piece rate, the number of units produced); total earnings; gross wages; itemization of all deductions; and net payment.

The employer will make the following deductions from the worker's wages FICA taxes and federal income tax (only from domestic workers) as required by law, cash advances and repayment of loans, repayment of overpayment of wages to the worker, cost of visa expenses paid by the worker to the extent the federal minimum wage is sustained during the first pay period of employment, payment for articles which the worker has voluntarily purchased from the employer, long distance telephone charges attributed to a worker, recovery of any loss to the employer due to the worker's damage (beyond normal wear and tear) or loss of equipment or damage to housing where it is shown that the worker is responsible and any other deductions expressly authorized by the worker in writing.

## I. Rates of Pay

This job includes activities paid by the hour, and piece rate wages. Workers are guaranteed that their total earning will be at least the prevailing rate for the crop activity or at least the AEWR ($8.37), whichever is higher, for all hours worked in the payroll period. If the USDOL promulgates a new AWER, it will become the guaranteed wage rate as of the published (effective) date.

| Activity | Piece Rate | Unit | Estimated Hourly Rate Equivalent |
|---|---|---|---|
| Harvest and field pack table grapes | $3.00[1] | 20 lbs. | $8.37 |
| Harvest processing grapes | $1.50 | 20 lbs. | $8.37 |
| Repack muscadine grapes | $0.07 | quart | $8.37 |
| Harvest and field pack persimmon | $1.00 | 20 lbs. | $8.37 |

[1] The employer may also pay workers that complete the season a discretionary bonus at the end of the season as an addition to the piece rate for harvesting and field packing table grapes of up to $0.50 per 20 lbs.

| | |
|---|---|
| Farm vehicle and equipment operation and minor maintenance | $8.37 |
| Vineyard maintenance | $8.37 |
| Farm, camp, field and shed sanitation | $8.37 |

### J.    Frequency of Pay
The payroll period shall be weekly.

### K.    Contract Impossibility
If, before the expiration date specified in the work contract, the services of the worker are no longer required for reasons beyond the control of the employer due to fire, hurricane, or other Act of God which makes the fulfillment of the contract impossible, the employer may terminate the work contract. In the event of such termination of a contract , the employer shall fulfill the three-fourths guarantee for the time that has elapsed from the start of the work contract to its termination.

### L.    Copy of Work Contract
A copy of the work contract and work rules will include the terms and conditions of employment specified in the regulations. A copy of such contract will be provided to the worker no later than the day on which the worker begins employment.

### M.    Occupational Qualifications
The employer will not require workers to have a specified level of education or experience.

### 2.    Assurances
The employer agrees to abide by the assurances specified in the conditions of 20 CFR Part 655, Subpart B, including the regulations at 20 CFR 655.103.

### 3.    Other Conditions of Employment
#### A.    Termination & Discipline
The employer may terminate the worker for any lawful job-related reason and will notify the local office when/if such a termination occurs. The employer may discipline the worker including requiring the worker to leave (without pay) the field for a period determined by the foreman, unpaid suspension from employment for up to three days, or termination of employment. Workers will be terminated or disciplined for failure to follow work rules (see attachments).

#### B.    Injuries
Workers will be covered by Worker's Compensation Insurance or equivalent employer provided insurance for injuries arising out of and in the course of employment. Employer's proof of insurance coverage will be provided to the

Regional Administrator before certification is granted. Worker shall report any injury as soon as possible.

## C.     Employer Obligation If Employment Is Extended

No extension of employment beyond the period of employment specified in the job order shall relieve the employer from paying the wages already earned.

## D.     Notice of Changes in Employment Terms and Conditions

The employer will expeditiously notify the Appropriate Regional Administrator, ETA, by telephone immediately upon learning that a crop is maturing earlier or later, that weather conditions, over recruitment, or other factors have changed the terms and conditions of employment.

## E.     Outreach Workers

Outreach workers shall have reasonable access to workers pursuant to 20 CFR 653.107 and 20 CFR 653.501.

## F.     Training

The training period for all crop activities is 2 days starting with the first day of employment to acclimate the worker to the physical demands of farm work and to familiarize workers with job specifications and to demonstrate proper harvest methods and other crop specific issues. After completion of the training period, workers are to keep up with fellow workers; and not detrimentally affect other workers productivity.

## G.     Days and Hours of Work

Workers will report to work at the designated time and place as directed by the grower each day. The standard work is seven hours per day Monday-Friday and five hours on Saturday; however, workers may be requested to work more hours per day but will not be required to do so. Workers may be requested to work on federal holidays and on the Sabbath but will not be required to do so. Workers may volunteer to work additional hours when work is available.

Workers should expect occasional periods of little or no work because of weather, crop or other conditions beyond the employer's control. These periods can occur anytime throughout the season.

Workers are not required to work on Sabbath or on federal holidays which are New Year's Day, January 1; Martin Luther King, Jr.'s birthday, the third Monday in January; Washington's birthday, the third Monday in February; Memorial Day, the last Monday in May; Independence Day, July 4; Labor Day, the first Monday in September; Columbus Day, the second Monday in October; Veteran's Day, November 11; Thanksgiving Day, the fourth Thursday in November; and Christmas Day, December 25.

## H.     Job Specifications

Most job duties listed below require workers to work in a bent, stooping or kneeling position and in extremely hot or wet weather. Workers must use care

when performing duties listed below not to damage fruit. All operations must meet standards contained in the employer's contract with the buyer.

Operational specifications can change during the season due to crop or market condition. Workers will be expected to conform to the specific instructions given for each day's work. Instructions and general supervision will be provided by the farm owner, supervisor or a designated employee. Daily individual work assignments, crew assignments and location of work will be made by the grower or supervisor as the needs of the operation dictate. Workers may be assigned a variety of duties in any given day and different tasks on different days.

Harvest and pack grape: Worker will proceed down row and pick grapes of correct size, color and ripeness. Worker will not detach stem from grape in harvest process. Worker will place grapes or grape clusters into harvest container until the correct level of fullness is reached. Worker will carry container to designated location for emptying or exchange with empty container. Worker will return to row and repeat process. Worker will not damage grapevine or grapes. Worker will clean grapes as shown, discarding damaged grapes and place appropriate amount of product into package, seal and stack.

Vineyard maintenance: Workers may prune vines or trees, irrigate, control weeds.

Persimmon - Workers will pick persimmon of the correct size and maturity, being careful not to damage tree branches, and place into picking container until the correct level of fullness is reached. Berries are tissue wrapped and boxed in the field.

Farm vehicle and equipment operation and maintenance: Worker will drive truck from field to the packing shed and return to field. Driver will drive bus or other transportation vehicle from the housing unit to the worksite and return to the housing units. Worker may also drive to town in transportation vehicles to allow workers to shop. Worker may do repair work on the farm and transportation vehicles and other agricultural equipment. Worker may drive the tractor.

Farm, camp, field and shed sanitation: Workers may be responsible for picking up trash, cleaning bathrooms, sweeping floors and other farm, camp and shed sanitation duties.

**I.      Referral Instructions**
Upon hiring, the employment authorization status of all workers will be verified through the Social Security Administration, when possible. Applicants referred on this job order should be advised that they must possess legal, suitable documents to complete the I-9 form as required by IRCA. Workers should be fully apprised by the local office of the terms, conditions and nature of employment prior to referral and may be given a copy of the ETA 790. After fully explaining the job, employment service interviewers may fax a completed referral form to AgWorks, Inc at (229) 559-6563 or contact Ms. Sherri Wilson, Georgia Department of Labor, 148 International Blvd., Rm. 450, Atlanta, Georgia 30303,

telephone (404) 232-3500. All applicants referred by SES will be notified of their reporting date by letter. This letter will be mailed by close of business (4:30 Eastern Time) on the day the referral form is received from the SES. Applicants will be accepted from all sources.

**J.     Other**

There are not any strikes, work stoppage, slowdowns or interruption of operations by employees at the place where the workers will be employed. There are not any arrangements made with the grower for the payment of a commission or other benefits for sales made to the workers.

**K.     Miscellaneous**

The employer is an Equal Employment Opportunity employer.

# WORK RULES

The following rules are intended to provide standards of conduct expected of workers employed under this contract. Violations of these rules or other lawful, job-related employer requirements will be considered grounds for termination. In cases of less serious violations, penalties such as suspension without pay for up to three (3) days will be imposed. Workers are expected to comply with ALL rules related to discipline, attendance, work quality/quantity and the care/maintenance of all property.

1.     Workers who perform fraudulent/sloppy work, as defined in Section 3-H, Job Specifications, will be suspended without pay for the remainder of the workday or up to three (3) days based on the supervisor's consideration of the degree of infraction, the worker's prior record, and other relevant factors. Subsequent offenses may result in termination/discharge.

2. No use or possession of alcohol or unlawful drugs is permitted during work time or during any workday or before work is completed for that day (such as during meal or break periods). Workers may not report for work under the influence of alcohol or illegal drugs. Illegal drugs may not be used nor kept on the employer's premises.

3. Excessive absences or tardiness will not be permitted. Excessive absence is defined as three consecutive days of unexcused absence or five unexcused absences within a 30-day period.

4. Workers are expected to maintain their living quarters to OSHA standards posted on the property and shall promptly report problems to employer. Workers shall cooperate with other workers assigned to the same housing in maintaining kitchen, dining, bathroom and living areas to OSHA standards.

5.     Workers living in employer-provided housing that are assigned bunk beds may not separate nor move bunk beds.

6. Workers living in employer-provided housing may not cook in sleeping rooms or any other non-kitchen areas.

7.     Workers may not repeated drop paper, cans, bottles or other trash in fields, packinghouses or housing areas. Trash and waste receptacles must be used.

8. With the exception of the worker's assigned housing and/or work area/field, workers may not enter employer's premises without authorization by the person in charge.

9. With the exception of the worker's assigned housing, workers may not enter the employer's premises at times other than during hours the employee is scheduled to work.

10. Workers may not begin work prior to the scheduled starting time or continue working after stopping time unless authorized by the employer.

11. Workers may not abuse/extend break periods which may be provided or take unauthorized breaks from work.

12. Workers may not deliberately restrict production.

13. Workers may not engage in horseplay, scuffling, throwing things, wasting time or loitering during work hours. Workers may be discharged for fighting on the employer's premises at any time.

14. Workers may not post nor remove any notices, signs or other instructions from the employer's property.

15. Workers may be discharged if they steal from fellow workers or from the employer.

16. Workers may not falsify personnel, medical, production or other work-related records.

17. Workers may not willfully abuse or destroy any machinery, equipment, tools or other property belonging to the employer or other employees.

18. After completion of the training period, workers are to keep up with fellow workers; and not detrimentally affect other workers productivity.

19. Workers may not commit acts of insubordination.

20. Workers may not interrupt other workers rest/sleep periods by excessive or unnecessary noise or commotion.

21. Workers may not have guests in employer-provided housing past 10:00 pm, except on Saturday, not past 12:00 midnight. Workers and/or their guests may not engage in indecent, immoral or illegal conduct at any time on the employer's premises.

22. Repeated failure to follow instructions, obey safety requirements, and equipment and vehicle operation instructions may result in termination.

23. Any worker who repeatedly impedes the progress of the group by tardiness, leaving early, lax adherence to picking standards, or rough handling of produce may be terminated.

24. No firearms or other weapons may be brought onto the employer's premises AT ANY TIME.

FAILURE TO COMPLY WITH THE ABOVE WORK RULES MAY RESULT IN TERMINATION/DISCHARGE.

IF YOU DO NOT UNDERSTAND ANY OF THE ABOVE RULES, ASK YOUR SUPERVISOR FOR AN EXPLANATION.

# Agricultural Work Agreement

Employer:    Shannon Produce Farm, Inc.
Employee:_____

The employee agrees to diligently and faithfully perform all the assigned duties within the job description under the direction of the employer's supervisors.  This employment shall be governed also by the following terms and conditions:

1.    **Name, Address, Telephone Number and Place of Work of Employer:**
                       Shannon Produce Farm, Inc.
                       299 Racehorse Road
                       Sylvania, Georgia  30467
                       (912) 857-3876

2.    **Name and Address of Employee at Time of Recruitment:**
      **Address:**                                **Telephone:**
      **City, State, Zip**

3.    **Place of Recruitment:**
      _____, Georgia;  _____ Other;  _____, Mexico

4.    **Wages:** $8.37/hour and/or piece rates

5.    **Area of Employment:** Work will be performed in:  Screven County, Georgia

6.    **Period of Employment:**  Begins: 07/17/2006         Ends:  11/15/2006

7.    **Full Crop Commitment:**
      This is regular work for the full period of employment.  The employee agrees to work for the employer seven hours on Monday-Friday and five hours on Saturday.  The employee understands that if she/he quits or is terminated for cause prior to the completion of the employment period, she/he may not be eligible for rehire in the future, unless the termination is a mutual agreement between the employer and employee.

8.    **Work Rules, Discipline and Termination:**
      A copy of the work rules will be provided to workers by the employer no later than on the day that work commences.  The work rules are intended to provide guidance to workers of the standards of conduct expected of them.  Violation of these rules or other lawful job-related employer requirements will be considered grounds for termination.  In cases of less serious violations, workers will be penalized such as suspension from work without pay for up to three days.  Workers are expected to comply with all rules relating to discipline, attendance, work quality and quantity, and the care and maintenance of all property.

Date employee provided a copy of contract, work rules and work  agreement: _____, 2006.

(SIGN)

_____          _____
Employee            (date)                    Employer            (date)

# AGENT AGREEMENT

**Shannon Produce Farm, Inc.**
**299 Racehorse Road**
**Sylvania, Georgia  30467**


**Re:  H2A Program**

**TO WHOM IT MAY CONCERN:**

I, the Undersigned, name and appoint AgWorks, Inc., P.O. Box 580, Lake Park, Georgia, 31636, my agent in my H2A application.  AgWorks, Inc. is authorized to act on my behalf.  I assume full responsibility for the accuracy of the application and for all representations made to my agent, and to indemnify and hold AgWorks, Inc. harmless for any judgments, attorney's fees and costs as a result of my failure or alleged failure to follow the law pertaining to my employment of workers hereunder.  All information is to be released to my agent hereunder.  My agent will file the application, publish the advertisements, prepare my petition to obtain the benefit being sought, and administer my paperwork to qualify me for the H2A program. My agent will cooperate with the government in all matters.  A copy of this agreement shall be as effective for all purposes as an original.

Send all correspondence on all matters to:

AgWorks, Inc.
P.O. Box 580
408 West Marian Drive
Lake Park, Georgia 31636
(229/559-6879)


SHANNON PRODUCE FARM, INC.

By: _____        5-31-2006
       (Signature)                                   (Date)

# FAX TO:  AgWorks, Inc. @ 229/559-6563

**Name of Referring Agency:** (State)_____

**Agency Representative:**     _____

**Phone/FAX:**                _____/_____

# REFERRAL FOR JO #_____

**Applicant Name:** _____

**Address:** _____

_____(Zip Code)_____

**Telephone:** _____(Message Phone)_____

**Social Security No: (optional)** _____

**Job you are applying for:** _____

**Job Order Number:**     _____

**Are you 16 years of age or older?  Yes_____  No_____**

**Do you understand that this job is temporary?  Yes_____No_____**

**Did the Job Service explain the job to you?  Yes_____  No_____**

*If the job duties and working conditions have not been explained to you, you may wish to call 1-800-280-8063 for a full description of what you will be doing on the farm.*

**Date you can begin work:** _____

**Signature of applicant:**     _____

**Date of Application:**     _____

*We check employment eligibility of all employees.*

## AGRICULTURE

*17*

Now hiring 95 temp. farmworkers, 07/10/06-11/15/06 to harvest & pack grapes, and do farm, field and shed sanitation in Screven County, GA.   Three-fourths of an average of 40 hrs/wk guaranteed. All tools, equipment provided at no cost.  Housing provided at no cost if outside commuting area.  Transportation and subsistence expense to the job will be paid when 50% of contract period completed if outside commuting area.  We guarantee $8.37/hr for piece rates set and agreed to prior to work ranging from $3.00/20lbs. to harvest & field pack table grapes to $0.07/quart to repack, and all hourly jobs. We check employment eligibility of all applicants.  Interested workers should contact their nearest local State Employment Service Office and refer to job order no. GA_____.

# FACSIMILE TRANSMITTAL SHEET



## Georgia Department of Labor

SENDER'S NAME: _V. Sims_

SENDER'S FAX NO: _4-232-3498_

TO: _Jonda Lewis_     FAX NO: _____

DEPT / COMPANY: _AgWerks Inc_

ADDRESS: _____

DATE TRANSMITTED: _6/5/06_     TOTAL PAGES TRANSMITTED: _____

<u>If problems occur, or if you do not receive all of the pages indicated, please call the sender immediately.</u>

FROM: _Vickie_     TELEPHONE NO: _____

OFFICE: _Agricultural Services_

ADDRESS: _148 Andrew Young Blvd Atlanta, Ga 30303_

COMMENTS: _Job Order # GA 7494234_
_Shannon Produce Farm_

---

## CONFIDENTIALITY

The documents accompanying this facsimile transmittal contain information from the Georgia Department of Labor which may be confidential or privileged. The information is intended only for the use of the individual or entity named on this transmittal sheet. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or the taking of any action in reliance on the contents of this telecopied information is strictly prohibited and that the documents should be returned to this office immediately. If you have received this facsimile in error, please notify us by telephone immediately.

Equal Opportunity Employer/Program • Auxiliary Aids & Services Are Available Upon Request To Individuals With Disabilities

DOL-1429 (R-01/01)



# Georgia Department of Labor

MICHAEL L. THURMOND
COMMISSIONER

# FACSIMILE TRANSMITTAL SHEET

FAX NUMBER ____ (404) ~~~~~ 232- 3498

SENDER __V. Sims__

TO: __Manager / Ag Specialist__

FAX NUMBER: _____

DEPT/COMPANY: __Statesboro__

FROM: __Vickie__

GDL OFFICE: __Agriculture & Alien Labor Certification/Employment Services Division__

TELEPHONE: __(404) 232-3500__ ~~~~~ _____

TOTAL PAGES TRANSMITTED: _____ DATE TRANSMITTED: __6/5/06__

If problems occur, or if you do not receive all of the pages indicated, please call the sender immediately.

COMMENTS: __JOB ORDER # GA 7494234 Shannon Produce__
__PLEASE DISCLOSE ALL TERMS & CONDITIONS TO APPLICANT.__
__FOLLOW REFERRAL INSTRUCTIONS.__

### Confidentiality

The documents accompanying this facsimile transmittal contain information from the Georgia Department of Labor which may be confidential or privileged. The information is intended only for the use of the individual or entity named on this transmittal sheet. If your are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this telecopied information is strictly prohibited and that the documents should be returned to this office immediately. If you have received this facsimile in error, please notify us by telephone immediately.

# Exhibit B

**Agricultural and Food Processing Clearance Order**
Pedido de Empleados para Agricultura y Procesamiento de Alimentos

**U.S. Department of Labor**
Employment and Training Administration

O.M.B. Approval No. 1205-0134, Expires 08/31/2009

| 1. Employer's Name and Address (Number, Street, City, State, Zip Code, and telephone number) Nombre y Dirección del Empleador (Número, calle, ciudad, código postal y teléfono) | Industry Code / Código de Industria | Job Order # / No. Orden de Empleo |
|---|---|---|
| Shannon Produce Farm, Inc., 299 Racehorse Road, Sylvania, GA 30467, (912) 857-3876 | 01/12 | GA 7594408 |

Occupational Title and Code / Título Ocupacional y Código
Harvest worker fruit 403-687-018

HLR 6/13/07

Clearance Order Issue Date / Fecha de Tramite: 6/1/07

Job Order Expiration Date / Fecha de expiración: 9/8/07

**2. Location and Direction to Work Site / Dirección del lugar de trabajo**
Same as above / From Sylvania, GA., take Hwy 21 south for approx. 7.5 miles to Hunters Road. Turn left on Hunters Road for 3.3 miles to Racehorse Road, first farm on left.
(see attachment / para más detalles vea    )

**6. Anticipated Period of Employment / Periodo Anticipado de Empleo**
From/ Desde: 07/15/2007   To / Hasta 11/01/2007

**7. No. of Worker's Requested / No. de Trabajadores Pedidos**        92

**3. Location and Description of Housing / Dirección y Descripción de la Vivienda**
Housing on premises / 2 barracks type units
(see attachment / para más detalles vea    )

**8. Anticipated Hours of Work per Week / Horas Anticipadas de Trabajo por Semana    Total:    40**

| | | | |
|---|---|---|---|
| Sunday / Domingo | 0 | Wednesday / Miercoles | 7 |
| Monday / Lunes | 7 | Thursday / Jueves | 7 |
| Tuesday / Martes | 7 | Friday / Viernes | 7 |
| | | Saturday / Sabado | 5 |

**9. Collect Calls Accepted/Se Aceptan Llamadas a Cobrar:**
Employer / El Empleador    Yes ☐   No ☒
Local Office/Oficina Local   Yes ☐   No ☐

**4. Board Arrangements / Arreglo de Alojamiento**
Housing provided at no cost to workers not reasonably able to return to residence
(see attachment / más detalles vea 1-B)

**5. Referral Instructions / Instruciones para el Referimiento de Candidatos**
Fax referral forms to Shannon Produce Farm, Inc. at (912) 857-5390
(see attachment / para más detalles vea 3-I)

**10. Job Specifications / Descripción del Trabajo [Summary of Material Job Specifications in ENGLISH must be included inside this box]**
Harvest, grade and field pack grapes; repack grapes; harvest and field pack persimmon; vineyard maintenance; farm vehicle equipment operation and minor maintenance; and farm, camp, field and shed sanitation duties. Work is outside. Prolonged bending and reaching.
(see attachment / para más detalles vea 3-H)

**10 a.  Descripción del Trabajo / Job Specifications  [Summary of Material Job Specifications in SPANISH must be included inside this box]**
Cosechar, clasificar y empacar uvas en campo; reempacar uvas; cosechar y empacar caqui en el campo; mantenimiento de la viña; operación y mantenimiento secundario de vehículo de granja; deberes de limpieza sanitaria de granja, campo y cobertizo. El trabajo es afuera. Estar agachado y estirarse por mucho tiempo.

RECEIVED
MAY 29 2007
AGRICULTURAL & ALIEN CERTIFICATION

ETA 790 (Rev. July 2004)

(see attachment / para más detalles vea ____ )

### 11. Wage Rates, Special Pay Information and Deductions / Tarifa de Pago, Información Sobre Pagos Especiales y Deducciónes (Rebajas)

| Crop Activities / Cultivos | Hourly Wage Salario por Hora | Piece Rate / Unit(s) Pago por Pieza / Unidad(es) | Special Pay (bonus, etc.) Pagos Especiales (Bono, ect.) | Deductions / Deducciónes | YES SI | NO | Pay Period Período de Pago |
|---|---|---|---|---|---|---|---|
| Harvesting and field pack table grapes | $ 8.51 | $ 3.00 / 20 lbs. | | Social | x | | Weekly / Semanal |
| Harvesting processing grapes | $ 8.51 | $ 1.50 / 20 lbs. | | Federal Tax Impuestos Federales | x | | |
| Repack muscadine grapes | $ 8.51 | $ 0.07 / quart | | State Tax Impuestos Estatales | x | | Bi-weekly / cada 2 sem. |
| Harvest and field pack persimmon | $ 8.51 | $ 1.00 / 20 lbs. | | Meals (comidas) | | x | |
| Farm, camp, field and shed sanitation duties | $ 8.51 | $ | | Other (specify)/ Otro | | x | Other / Otro |

More Details About thePay/Más Detalles Sobre el Pago
Workers are guaranteed that their total earnings will be at least the prevailing wage for the crop activity or at least the AEWR, whichever is higher, for all hours worked in the payroll period.

(see attachment / para más detalles vea 1-I)

### 12. Transportation Arrangements / Arreglos de Transportación  (Please explain)
Employer will reimburse the reasonable cost of transportation and subsistence.

(see attachment / para más detalles vea 1-F)

### 13. Is it the prevailing practice to use Farm Labor Contractors (FLC) to recruit, supervise, transport, house, or pay workers for this (these) crop activity(ies)? Es la costumbre en el area de usar Contratistas Agricolas para reclutar, supervisar, transportar, dar vivienda, ó pagarle a los trabajadores en este/estos tipo(s) de cosecha(s)/sembrado(s)?  Yes/Si  ☐   No ☒  If you have checked yes, what is the FLC  wage for each activity?/Si contesto "Si", cual es el salario que le paga al Contratista Agricola para cada actividad?

### 14. Unemployment insurance provided / Seguro por Desempleo:                                                                 Yes ☐      No ☒
### 15. Workers' compensation insurance provided / Indemnización por accidente de trabajo:                                  Yes ☒      No ☐
### 16. Are tools provided at no charge to the workers? / ¿Se le proveen las herramientas de trabajo a los trabajadores sin cargo alguno?   Yes ☒   No ☐

### 17. List any arrangements which have been made with establishment owners or agents for the payment of a commission or other benefits for sales made to workers.  (If there are no such arrangements, enter "None")/Indique todo acuerdo o convenio con los propietarios del establecimiento o sus representantes con respecto al pago de una comisión u otros beneficios por ventas hechas a los trabajadores. (Si no hay ningún acuerdo o convenio, indique "Ninguno")
None / Ninguno

### 18. List any strike, work stoppage, slowdown, or interruption of operation by the employees at the place where the workers will be employed.  (If there are no such incidents, enter "None")/ Enumere todo huelga, paro o interrupción de las operaciones por parte de los empleados en el lugar de empleo. (Si no hay, indique "Ninguno")
None / Ninguno

### 19. Address of Order Holding Office (include Telephone number)/Dirección de la Oficina donde se Radicó la Oferta (incluya número de teléfono)
Ms. Sherri Wilson, Georgia Department of Labor, 148 International Blvd., Rm. 450, Atlanta, Georgia  30303 (404 )232-3500

### 20. Name of Local Office Representative (include direct dial telephone number) / Nombre del Representante de la Oficina Local (Incluya numero de telefono)

### 21. Employer's Certification: This job order describes the actual terms and conditions of the employment being offered by me and contains all the material terms and conditions of the job.
Certificación del Empleador: Esta orden de trabajo describe los términos y condiciones de trabajo y contiene todos los materials, terminus, y condiciones ofrecidos.
Employer's Signature & Title/ Firma y Título del Empleador
James Shannon, Jr.                                                                                                          5/22/07

READ CAREFULLY: In view of the statutorily established basic function of the Employment Service as a no-fee labor exchange, that is, as a forum for bringing together employers and job seekers, neither the ETA nor the State agencies are guarantors of the accuracy or truth-fullness of information contained on job orders submitted by employers. Nor does any job order accepted or recruited upon by the One-Stop Career Center constitute a contractual job offer to which the One-Stop Career Center, ETA or a State agency is in any way a party.
LEASE CUIDADOSAMENTE: En vista de su función básica establecida estatutariamente el Servicio de Empleo es un  intercambio gratis de trabajo para juntar a los empleadores y trabajadores que buscan empleo, ni ETA ni las agencias del estado pueden garantizar la verdad y certeza de la información contenida en la Orden de Trabajo sometida por el Empleador. Tampoco, ninguna orden de trabajo aceptada o reclutada por el Servicio de Empleos constituye una oferta contractual de la cual ETA ni la agencia del Estado son parte

Public reporting burden for the ETA Form 790 is estimated to be approximately 60 minutes per response, including time for reviewing instructions, searching existing data sources, gathering and reviewing the collection.  Respondents obligagation to reply to these requirements are mandatory by 20 CFR 653.500.  Persons are not required to respond to this collection of information unless it displays a currently valid OMB control number.  Comments regarding this burden estimate or any other aspect of this collection, including suggestions for reducing the burden can be sent to the U.S. Department of Labor, Office of Workforce Investment, Room S-4321, Washington, D.C. 20210 (Paperwork Reduction Project 1205-0134).

ETA 790 (Rev. July 2004)

RECEIVED

MAY 2 9 2007

AGRICULTURAL & ALIEN CERTIFICATION

OMB Approval No. 44-R1301

U.S. DEPARTMENT OF LABOR
Employment and Training Administration

APPLICATION
FOR
ALIEN EMPLOYMENT CERTIFICATION

**IMPORTANT: READ CAREFULLY BEFORE COMPLETING THIS FORM**

PRINT legibly in ink or use a typewriter. If you need more space to answer questions in this form, use a separate sheet. Identify each answer with the number of the corresponding question. SIGN AND DATE each sheet in original signature.

To knowingly furnish any false information in the preparation of this form and any supplement thereto or to aid, abet, or counsel another to do so is a felony punishable by $10,000 fine or 5 years in the penitentiary, or both (18 U.S.C. 1001).

**PART A. OFFER OF EMPLOYMENT**

| 1. Name of Alien    (Family name in capital letter, First, Middle, Maiden) |
|---|

| 2. Present Address of Alien    (Number, Street, City and Town, State ZIP code or Province, Country) | 3. Type of Visa    (If in U.S.) |
|---|---|

The following information is submitted as an offer of employment.

| 4. Name of Employer    (Full name of Organization) | 5. Telephone |
|---|---|
| SHANNON PRODUCE FARM, INC. | (912) 857-3876 |

6. Address    (Number, Street, City and Town, State ZIP code)
299 RACEHORSE ROAD
SYLVANIA                  GA          30467

7. Address Where Alien Will Work    (if different from item 6)

| 8. Nature of Employer's Business Activity | 9. Name of Job Title | 10. Total Hours Per Week | | 11. Work Schedule | 12. Rate of Pay | |
|---|---|---|---|---|---|---|
| | | a. Basic | b. Overtime | (Hourly) | a. Basic | b. Overtime |
| | FARMWORKER, FRUIT | 40 | | 7:00 a.m. 3:00 p.m. | $ 8.51 per Hourly | $ per hour |

13. Describe Fully the job to be Performed    (Duties)

Harvest, grade and field pack grapes; repack grapes; harvest and field pack persimmon; vineyard maintenance; farm vehicle equipment operation and minor maintenance; and farm, camp, field and shed sanitation duties.

14. State in detail the MINIMUM education, training, and experience for a worker to perform satisfactorily the job duties described in Item 13 above.

15. Other Special Requirements

Work is outside.   Prolonged bending and reaching.

| EDU-CATION (Enter number of years) | Grade School | High School | College | College Degree Required    (specify) |
|---|---|---|---|---|
| | | | | Major Field of Study |

| TRAIN-ING | No. Yrs. 0 | No. Mos. 0 | Type of Training 0 |
|---|---|---|---|

| EXPERI-ENCE | Job Offered | | Related Occupation Number | | Related Occupation    (specify) 0 |
|---|---|---|---|---|---|
| | Yrs. 0 | Mos. 0 | Yrs. 0 | Mos. 0 | |

| 16. Occupational Title of Person Who Will Be Alien's Immediate Supervisor | FOREPERSON | 17. Number of Employees Alien Will Supervise    0 |
|---|---|---|

ENDORSEMENTS    (Make no entry in section - for Government use only)

| Date Forms Received | |
|---|---|
| L.O. | S.O. |
| R.O. | N.O. |
| Ind. Code | Occ. Code |
| Occ. Title | |

Replaces MA 7-50A, B and C (Apr. 1970 edition) which is obsolete.

ETA 750 (Oct. 1979)

ETA Case Number  A-07136-04111

| 18.  COMPLETE ITEMS ONLY IF JOB IS TEMPORARY | | | 19.  IF JOB IS UNIONIZED (Complete) | | |
|---|---|---|---|---|---|
| a. No. of Openings To Be Filled By Aliens Under Job Offer | b. Exact Dates You Expect To Employ Alien | | a. Number of Local | b. Name of Local | |
| | From | To | | | |
| 92 | 07/15/2007 | 11/01/2007 | | c. City and State | |

**20.  STATEMENT FOR LIVE-AT-WORK JOB OFFERS   (Complete for Private Household ONLY)**

| a. Description of Residence | | b. No. Persons residing at Place of Employment | | | | c. Will free board and private room not shared with anyone be provided? |
|---|---|---|---|---|---|---|
| ("X" one) ☐ House ☐ Apartment | Number of Rooms | Adults | | Children | Ages | ("X" one) ☐ YES  ☐ NO |
| | | | BOYS | | | |
| | | | GIRLS | | | |

**21.  DESCRIBE EFFORTS TO RECRUIT U.S. WORKERS AND THE RESULTS. (Specify Sources of Recruitment by Name)**

Job orders have been placed with the State Employment Service locally and entered into USDOL"s National Job Bank.  Ads have been placed in local newspapers.  Word of mouth has been extensively used, both in the community and with other similar business establishments.  None of these methods has produced results adequate to sustain our production during peakload seasons.  We will continue to pursue the above recruitment methods to attract domestic workers and will cooperate with the State Employment Service in any required recruitment activities.

**22.  Applications require various types of documentation.  Please read Part II of the instructions to assure that appropriate supporting documentation is included with your application.**

**23.  EMPLOYER CERTIFICATIONS**

By virtue of my signature below, I HEREBY CERTIFY the following conditions of employment.

a.  I have enough funds available to pay the wage or salary offered the alien.

b.  The wage offered equals or exceeds the prevailing wage and I guarantee that, if a labor certification is granted, the wage paid to the alien when the alien begins work will equal or exceed the prevailing wage which is applicable at the time the alien begins work.

c.  The wage offered is not based on commissions, bonuses, or other incentives, unless I guarantee a wage paid on a weekly, bi-weekly, or monthly basis.

d.  I will be able to place the alien on the payroll on or before the date of the alien's proposed entrance into the United States.

e.  The job opportunity does not involve unlawful discrimination by race, creed, color, national origin, age, sex, religion, handicap, or citizenship.

f.  The job opportunity is not:

(1)  Vacant because the former occupant is on strike or is being locked out in the course of a labor dispute involving a work stoppage.

(2)  At issue in a labor dispute involving a work stoppage.

g.  The job opportunity's terms, conditions and occupational environment are not contrary to Federal, State or local law.

h.  The job opportunity has been and is clearly open to any qualified U.S. worker.

**24.  DECLARATIONS**

DECLARATION OF EMPLOYER ► Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury the foregoing is true and correct.

| SIGNATURE | DATE |
|---|---|
| | 5/22/07 |

| NAME (Type or Print) | TITLE |
|---|---|
| JAMES SHANNON, JR. | PRESIDENT |

AUTHORIZATION OF AGENT OF EMPLOYER ► I HEREBY DESIGNATE the agent below to represent me for the purposes of labor certification and I TAKE FULL RESPONSIBILITY for accuracy of any representations made by my agent.

| SIGNATURE OF EMPLOYER | DATE |
|---|---|
| | 5/22/07 |

| NAME OF AGENT (Type or Print) | ADDRESS OF AGENT (Number, Street, City, State, ZIP code) | |
|---|---|---|
| AGWORKS,  INC. | POST OFFICE BOX 580 | 408 WEST MA |
| | LAKE PARK                    GA | 31636 |

# CONDITIONAL ACCESS

This request for conditional access into the intrastate or interstate clearance system is made on behalf of Shannon Produce Farm, Inc., whose housing has not been inspected and found in compliance with applicable regulations and is made with the express understanding that the employer assumes the obligation under the applicable regulations for timely compliance with applicable housing standards.

If said housing is not ready on the applicable date, the workers will be housed in local hotels and motels.

SHANNON PRODUCE FARM, INC.

By: _____

Date: _____ 5.22-2007 _____

COUNTIES OF OPERATION:  Screven County, Georgia

DRIVING DIRECTIONS TO EMPLOYER'S OFFICE AND HOUSING:  From Sylvania, take Hwy. 21 South 6 miles to Hunters Road.  Turn left on Hunters Road and go 3.3 miles east then take a right on Racehorse Road, first farm on left.

Attachment to ETA 790
Shannon Produce Farm, Inc.
(07/15/2007-11/01/2007) #92 WORKERS

1. **Contents of Job Offers and Assurances**
   **A.     Equivalent Treatment of U.S. and Alien Workers**
   The employer will offer U.S. workers at least the same opportunities, wages, benefits, and working conditions as those that the employer offers or intends to offer to non-immigrant foreign workers.

   **B.     Housing**
   Housing is provided at no cost to workers who are not reasonably able to return the same day to their place of residence. If said housing is not ready on the applicable date the workers will be housed in local hotels and motels. Housing is not provided to non-workers.   No charge will be made for beds or cooking utensils and similar items furnished to workers to whom housing is provided hereunder unless unlawfully removed or damaged beyond normal wear and tear. Housing includes free kitchen facilities.  The kitchen and other common areas will be shared.  Housing provided will be shared without regard to sex.   Separate toilet facilities shall be provided by the employer for males and females.

   Workers who reside in such housing agree to be responsible for maintaining the housing in a neat and clean manner.  Before occupancy, housing shall be in compliance with OSHA housing standards.  Workers residing in the housing will be responsible for maintaining the compliance standards as posted in the housing unit.   If there is a problem with the housing, it is the worker's responsibility to mention it to the employer.

   Reasonable repair costs of damages or loss of property, other than that caused by normal wear and tear, will be deducted from the employee's pay if it is shown that the individual did the damages.  The employer will deduct repair costs from the employee's pay over whatever time period necessary so that such deductions will not result in a worker's wages going below the federal minimum wage.  The employer retains possession and control of the housing premises at all times and workers, if provided housing under the terms of the work contract, shall vacate the housing promptly upon termination of employment.

   Workers residing in employer's housing may have mail directed to them at the employer's address on attached ETA 790.  Workers will be provided a telephone number where they may be contacted in case of emergency while residing in the housing. The employer will not accept collect calls.

   **C.     Workers' Compensation**
   Workers' compensation or equivalent insurance will be provided at no cost to all workers in the occupation for which workers are being sought.  The employer's proof of insurance coverage will be provided to the Regional Administrator before certification is granted.  If the workers compensation policy expires before the

end of the certification period, the employer will furnish an updated proof of insurance.

**D.    Employer Provided Items**
The employer will provide all supplies and equipment required in the performance of the specified work free of charge.  The employer will charge the worker for reasonable cost related to the worker's refusal or negligent failure to return any property furnished by the employer or due to such worker's willful damage or destruction of such property.

**E.    Meals**
The employer will furnish free cooking and kitchen facilities to those workers who are entitled to live in the employer's housing, so the workers may prepare their own meals.  Workers will buy their own groceries.  Once a week, the employer will offer to those workers who wish to participate, free transportation to and from town where there are shopping stores, a post office and pay telephone. The Employer may provide meals and charge employee $9.52 per day. This is at the option of the Employer.

**F.    Transportation**
The employer will not advance transportation and subsistence costs to worker for transportation to the place of employment.  The employer will not repay transportation for workers that do not have legal, suitable documents to comply with IRCA, are discharged for lawful job-related reason, apply for employment knowingly unable to perform the job activities, or who abandon employment. This applies only to workers for whom the employer is legally obligated to supply housing.  This benefit is not applicable to local workers who are not eligible for employer-provided housing.

After fifty percent of the employment period is complete, the employer will reimburse the worker for reasonable cost of transportation and subsistence from the place of recruitment to the grower's location.

Upon completion of the employment period, the employer will pay for worker's reasonable cost of return transportation and subsistence to the place of recruitment, except when the worker will not be returning to the place of recruitment due to subsequent employment with another employer who agrees to pay such costs, the employer only pays for the transportation to the next job.

The amount of such transportation payment will be equal to the worker's actual transportation costs not to exceed the most economical and reasonable common carrier transportation charges for the distance involved. The employer reserves the right to charter or otherwise arrange transportation to the point of recruitment, or to offer any combination of payment, chartered and /or arranged transportation to the point of recruitment If the employer arranges transportation, and the worker does not use that transportation, the worker will be reimbursed only for the cost of the employer arranged transportation.   Employees eligible for reimbursement under the program will be provided subsistence reimbursement.

The employer will provide transportation and subsistence under this agreement to workers whose services are no longer required for reasons beyond the control of the employer due to fire, hurricane, or other Act of God which makes fulfillment of the contract impossible, or if a worker is displaced by a U.S. worker under the 50 per cent rule. This benefit does not apply to workers who voluntarily quit employment before the end of the contract or who are terminated for cause. The employer will notify the Department of Labor if an employee is terminated for cause.

The employer will offer free transportation for workers from the employer's housing to the daily work site. The use of the transportation by the worker is voluntary, and no worker will be required as a condition of employment to utilize the transportation offered by the employer.

### G. Three-fourths Guarantee

The employer guarantees the worker an opportunity to work for at least three-fourths of the number of hours in the work days during the period of the contract and all amendments thereof are in effect. The period of the contract is from the first work day after arrival of the worker (workers ready, willing, able and eligible to work) at the place of employment until the expiration date of the work contract. The offer of employment expires as of the date specified on the work contract and any extension. For the purpose of the 3/4 guarantee, a workday consists of seven hours Monday-Friday and five hours on Saturday.

If the workers are not offered the opportunity to work for three-fourths of such hours during this period, then the employer will supplement the pay of the workers as though the worker had actually worked. If the worker is paid on a piece rate or other similar incentive system, the worker's average hourly piece rate earning (if higher than the AEWR) will be used in determining the amount due under this guarantee.

If the employer fails to notify the order holding office at least 10 working days prior to the original date of need, the employer will provide workers referred through the Agricultural Recruitment System a full week's work (as stated on the ETA 790) the week beginning with the anticipated date of need. For this situation, the employer will pay eligible workers referred through the interstate clearance system the AEWR for the first week starting with the original anticipated date of need. However, the employer may require the workers to perform alternative work (general farm labor and maintenance activities) if the guarantee cited is invoked. If the worker fails to notify the order holding office of continued interest in the job no sooner than nine working days and no later than five days before the date of need, the worker will be disqualified from the above mentioned assurance.

The three-fourths guarantee and transportation reimbursements shall be void from the beginning should the worker voluntarily abandon employment before the

end of the contract period or the worker is terminated for a lawful job-related reason.

The three-fourths guarantee will not apply to any H-2A worker who may be displaced by a U.S. worker under the fifty-percent rule.

## H.    Records, Earnings Statement and Deductions

The employer will keep and maintain adequate and accurate payroll and supporting records in accordance with the provisions of 20 CFR 655.102(b)(7). Each payday the employer will furnish to the worker one or more written statements showing name and payroll identification number; work starting and ending time; hours worked including hours offered and hours actually worked; reasons employee did not work when work was offered; hourly rate or piece rate (if piece rate, the number of units produced); total earnings; gross wages; itemization of all deductions; and net payment.

The employer will make the following deductions from the worker's wages FICA taxes and federal income tax (only from domestic workers) as required by law, cash advances and repayment of loans, repayment of overpayment of wages to the worker, cost of visa expenses paid by the worker to the extent the federal minimum wage is sustained during the first pay period of employment, payment for articles which the worker has voluntarily purchased from the employer, long distance telephone charges attributed to a worker, recovery of any loss to the employer due to the worker's damage (beyond normal wear and tear) or loss of equipment or damage to housing where it is shown that the worker is responsible and any other deductions expressly authorized by the worker in writing.

## I.    Rates of Pay

This job includes activities paid by the hour, and piece rate wages. Workers are guaranteed that their total earning will be at least the prevailing rate for the crop activity or at least the AEWR ($8.51), whichever is higher, for all hours worked in the payroll period. If the USDOL promulgates a new AWER, it will become the guaranteed wage rate as of the published (effective) date.

| Activity | Piece Rate | Unit | Estimated Hourly Rate Equivalent |
|---|---|---|---|
| Harvest and field pack table grapes | $3.00[1] | 20 lbs. | $8.51 |
| Harvest processing grapes | $1.50 | 20 lbs. | $8.51 |

---

[1]    The employer may also pay workers that complete the season a discretionary bonus at the end of the season as an addition to the piece rate for harvesting and field packing table grapes of up to $0.50 per 20 lbs.

| | | | |
|---|---|---|---|
| Repack muscadine grapes | $0.07 | quart | $8.51 |
| Harvest and field pack persimmon | $1.00 | 20 lbs. | $8.51 |
| Farm vehicle and equipment operation and minor maintenance | | | $8.51 |
| Vineyard maintenance | | | $8.51 |
| Farm, camp, field and shed sanitation | | | $8.51 |

### J.    Frequency of Pay
The payroll period shall be weekly.

### K.    Contract Impossibility
If, before the expiration date specified in the work contract, the services of the worker are no longer required for reasons beyond the control of the employer due to fire, hurricane, or other Act of God which makes the fulfillment of the contract impossible, the employer may terminate the work contract.  In the event of such termination of a contract , the employer shall fulfill the three-fourths guarantee for the time that has elapsed from the start of the work contract to its termination.

### L.    Copy of Work Contract
A copy of the work contract and work rules will include the terms and conditions of employment specified in the regulations.  A copy of such contract will be provided to the worker no later than the day on which the worker begins employment.

### M.    Occupational Qualifications
The employer will not require workers to have a specified level of education or experience.

## 2.    Assurances
The employer agrees to abide by the assurances specified in the conditions of 20 CFR Part 655, Subpart B, including the regulations at 20 CFR 655.103.

## 3.    Other Conditions of Employment
### A.    Termination & Discipline
The employer may terminate the worker for any lawful job-related reason and will notify the local office when/if such a termination occurs.  The employer may discipline the worker including requiring the worker to leave (without pay) the field for a period determined by the foreman, unpaid suspension from employment for up to three days, or termination of employment.  Workers will be terminated or disciplined for failure to follow work rules (see attachments).

### B.    Injuries

Workers will be covered by Worker's Compensation Insurance or equivalent employer provided insurance for injuries arising out of and in the course of employment. Employer's proof of insurance coverage will be provided to the Regional Administrator before certification is granted. Worker shall report any injury as soon as possible.

### C.    Employer Obligation If Employment Is Extended

No extension of employment beyond the period of employment specified in the job order shall relieve the employer from paying the wages already earned.

### D.    Notice of Changes in Employment Terms and Conditions

The employer will expeditiously notify the Appropriate Regional Administrator, ETA, by telephone immediately upon learning that a crop is maturing earlier or later, that weather conditions, over recruitment, or other factors have changed the terms and conditions of employment.

### E.    Outreach Workers

Outreach workers shall have reasonable access to workers pursuant to 20 CFR 653.107 and 20 CFR 653.501.

### F.    Training

The training period for all crop activities is 2 days starting with the first day of employment to acclimate the worker to the physical demands of farm work and to familiarize workers with job specifications and to demonstrate proper harvest methods and other crop specific issues. After completion of the training period, workers are to keep up with fellow workers; and not detrimentally affect other workers productivity.

### G.    Days and Hours of Work

Workers will report to work at the designated time and place as directed by the grower each day. The standard work is seven hours per day Monday-Friday and five hours on Saturday; however, workers may be requested to work more hours per day but will not be required to do so. Workers may be requested to work on federal holidays and on the Sabbath but will not be required to do so. Workers may volunteer to work additional hours when work is available.

Workers should expect occasional periods of little or no work because of weather, crop or other conditions beyond the employer's control. These periods can occur anytime throughout the season.

Workers are not required to work on Sabbath or on federal holidays which are New Year's Day, January 1; Martin Luther King, Jr.'s birthday, the third Monday in January; Washington's birthday, the third Monday in February; Memorial Day, the last Monday in May; Independence Day, July 4; Labor Day, the first Monday in September; Columbus Day, the second Monday in October; Veteran's Day,

November 11; Thanksgiving Day, the fourth Thursday in November; and Christmas Day, December 25.

## H.    Job Specifications

Most job duties listed below require workers to work in a bent, stooping or kneeling position and in extremely hot or wet weather. Workers must use care when performing duties listed below not to break or damage the plants. All operations must meet standards contained in the employer's contract with the buyer.

Operational specifications can change during the season due to crop or market condition. Workers will be expected to conform to the specific instructions given for each day's work. Instructions and general supervision will be provided by the farm owner, supervisor or a designated employee. Daily individual work assignments, crew assignments and location of work will be made by the grower or supervisor as the needs of the operation dictate. Workers may be assigned a variety of duties in any given day and different tasks on different days.

Harvest and pack grape:  Worker will proceed down row and pick grapes of correct size, color and ripeness. Worker will not detach stem from grape in harvest process. Worker will place grapes or grape clusters into harvest container until the correct level of fullness is reached. Worker will carry container to designated location for emptying or exchange with empty container. Worker will return to row and repeat process. Worker will not damage grapevine or grapes. Worker will clean grapes as shown, discarding damaged grapes and place appropriate amount of product into package, seal and stack.

Vineyard maintenance:  Workers may prune vines or trees, irrigate, control weeds.

Persimmon - Workers will pick persimmon of the correct size and maturity, being careful not to damage tree branches, and place into picking container until the correct level of fullness is reached. Fruit is tissue wrapped and boxed in the field.

Farm vehicle and equipment operation and maintenance:  Worker will drive truck from field to the packing shed and return to field. Driver will drive bus or other transportation vehicle from the housing unit to the worksite and return to the housing units. Worker may also drive to town in transportation vehicles to allow workers to shop. Worker may do repair work on the farm and transportation vehicles and other agricultural equipment. Worker may drive the tractor.

Farm, camp, field and shed sanitation:  Workers may be responsible for picking up trash, cleaning bathrooms, sweeping floors and other farm, camp and shed sanitation duties.

**I.      Referral Instructions**

Upon hiring, the employment authorization status of all workers will be verified through the Social Security Administration, when possible.  Applicants referred on this job order should be advised that they <u>must</u> possess legal, suitable documents to complete the I-9 form as required by IRCA.  Workers should be fully apprised by the local office of the terms, conditions and nature of employment prior to referral and may be given a copy of the ETA 790.  After fully explaining the job, employment service interviewers may fax a completed referral form to Shannon Produce Farm, Inc. at (912) 857-5390 or contact  Ms. Sherri Wilson, Georgia Department of Labor, 148 International Blvd., Rm. 450, Atlanta, Georgia  30303, telephone (404) 232-3500. Applicants will be accepted from all sources.

**J.      Other**

There are not any strikes, work stoppage, slowdowns or interruption of operations by employees at the place where the workers will be employed. There are not any arrangements made with the grower for the payment of a commission or other benefits for sales made to the workers.

**K.      Miscellaneous**

The employer is an Equal Employment Opportunity employer.

# WORK RULES

The following rules are intended to provide standards of conduct expected of workers employed under this contract. Violations of these rules or other lawful, job-related employer requirements will be considered grounds for termination. In cases of less serious violations, penalties such as suspension without pay for up to three (3) days will be imposed. Workers are expected to comply with ALL rules related to discipline, attendance, work quality/quantity and the care/maintenance of all property.

1.     Workers who perform fraudulent/sloppy work, as defined in Section 3-H, Job Specifications, will be suspended without pay for the remainder of the workday or up to three (3) days based on the supervisor's consideration of the degree of infraction, the worker's prior record, and other relevant factors. Subsequent offenses may result in termination/discharge.

2. No use or possession of alcohol or unlawful drugs is permitted during work time or during any workday or before work is completed for that day (such as during meal or break periods). Workers may not report for work under the influence of alcohol or illegal drugs. Illegal drugs may not be used nor kept on the employer's premises.

3. Excessive absences or tardiness will not be permitted. Excessive absence is defined as three consecutive days of unexcused absence or five unexcused absences within a 30-day period.

4. Workers are expected to maintain their living quarters to OSHA standards posted on the property and shall promptly report problems to employer. Workers shall cooperate with other workers assigned to the same housing in maintaining kitchen, dining, bathroom and living areas to OSHA standards.

5.     Workers living in employer-provided housing that are assigned bunk beds may not separate nor move bunk beds.

6. Workers living in employer-provided housing may not cook in sleeping rooms or any other non-kitchen areas.

7.     Workers may not repeated drop paper, cans, bottles or other trash in fields, packinghouses or housing areas. Trash and waste receptacles must be used.

8. With the exception of the worker's assigned housing and/or work area/field, workers may not enter employer's premises without authorization by the person in charge.

9. With the exception of the worker's assigned housing, workers may not enter the employer's premises at times other than during hours the employee is scheduled to work.

10. Workers may not begin work prior to the scheduled starting time or continue working after stopping time unless authorized by the employer.

11. Workers may not abuse/extend break periods which may be provided or take unauthorized breaks from work.

12. Workers may not deliberately restrict production.

13. Workers may not engage in horseplay, scuffling, throwing things, wasting time or loitering during work hours. Workers may be discharged for fighting on the employer's premises at any time.

14. Workers may not post nor remove any notices, signs or other instructions from the employer's property.

15. Workers may be discharged if they steal from fellow workers or from the employer.

16. Workers may not falsify personnel, medical, production or other work-related records.

17. Workers may not willfully abuse or destroy any machinery, equipment, tools or other property belonging to the employer or other employees.

18. After completion of the training period, workers are to keep up with fellow workers; and not detrimentally affect other workers productivity.

19. Workers may not commit acts of insubordination.

20. Workers may not interrupt other workers rest/sleep periods by excessive or unnecessary noise or commotion.

21. Workers may not have guests in employer-provided housing past 10:00 pm, except on Saturday, not past 12:00 midnight. Workers and/or their guests may not engage in indecent, immoral or illegal conduct at any time on the employer's premises.

22. Repeated failure to follow instructions, obey safety requirements, and equipment and vehicle operation instructions may result in termination.

23. Any worker who repeatedly impedes the progress of the group by tardiness, leaving early, lax adherence to picking standards, or rough handling of produce may be terminated.

24. No firearms or other weapons may be brought onto the employer's premises AT ANY TIME.

FAILURE TO COMPLY WITH THE ABOVE WORK RULES MAY RESULT IN TERMINATION/DISCHARGE.

IF YOU DO NOT UNDERSTAND ANY OF THE ABOVE RULES, ASK YOUR SUPERVISOR FOR AN EXPLANATION.

# Agricultural Work Agreement

Employer:    Shannon Produce Farm, Inc.
Employee:_____ _____ _____

The employee agrees to diligently and faithfully perform all the assigned duties within the job description under the direction of the employer's supervisors. This employment shall be governed also by the following terms and conditions:

1.  **Name, Address, Telephone Number and Place of Work of Employer:**
    Shannon Produce Farm, Inc.
    299 Racehorse Road
    Sylvania, Georgia  30467
    (912) 857-3876

2.  **Name and Address of Employee at Time of Recruitment:**
    **Address:**                              **Telephone:**
    **City, State, Zip**

3.  **Place of Recruitment:**
    _____, GA;  _____ Other;  _____, Mexico

4.  **Wages:** $8.51/hour and/or piece rates

5.  **Area of Employment:** Work will be performed in:  Screven County, Georgia

6.  **Period of Employment:**  Begins:  07/15/2007        Ends: 11/01/2007

7.  **Full Crop Commitment:**
    This is regular work for the full period of employment.  The employee agrees to work for the employer seven hours on Monday-Friday and five hours on Saturday.  The employee understands that if she/he quits or is terminated for cause prior to the completion of the employment period, she/he may not be eligible for rehire in the future, unless the termination is a mutual agreement between the employer and employee.

8.  **Work Rules, Discipline and Termination:**
    A copy of the work rules will be provided to workers by the employer no later than on the day that work commences.  The work rules are intended to provide guidance to workers of the standards of conduct expected of them.  Violation of these rules or other lawful job-related employer requirements will be considered grounds for termination.  In cases of less serious violations, workers will be penalized such as suspension from work without pay for up to three days.  Workers are expected to comply with all rules relating to discipline, attendance, work quality and quantity, and the care and maintenance of all property.

Date employee provided a copy of contract, work rules and work  agreement: _____, 2007.

(SIGN)

_____          _____
Employee            (date)              Employer            (date)

Page 12
Shannon Produce Farm, Inc.
ETA Case No. A-07136-04111

## AGENT AGREEMENT

**Shannon Produce Farm, Inc.**
**299 Racehorse Road**
**Sylvania, Georgia  30467**


 Re:  H2A Program

## TO WHOM IT MAY CONCERN:

I, the Undersigned, name and appoint AgWorks, Inc., P.O. Box 580, Lake Park, Georgia, 31636, my agent in my H2A application.  AgWorks, Inc. is authorized to act on my behalf.  I assume full responsibility for the accuracy of the application and for all representations made to my agent, and to indemnify and hold AgWorks, Inc. harmless for any judgments, attorney's fees and costs as a result of my failure or alleged failure to follow the law pertaining to my employment of workers hereunder.  All information is to be released to my agent hereunder.  My agent will file the application, publish the advertisements, prepare my petition to obtain the benefit being sought, and administer my paperwork to qualify me for the H2A program.  My agent will cooperate with the government in all matters.   A copy of this agreement shall be as effective for all purposes as an original.

Send all correspondence on all matters to:

AgWorks, Inc.
P.O. Box 580
408 West Marian Drive
Lake Park, Georgia 31636
(229/559-6879)

SHANNON PRODUCE FARM, INC.

By: _____          5·22·2007
         (Signature)                                              (Date)

# FAX TO: Shannon Produce Farm, Inc. @ (912) 857-5390

Name of Referring Agency: (State)_____
Agency Representative: _____
Phone/FAX: _____/_____

## REFERRAL FOR JO #_____

Applicant Name: _____

Address: _____

_____(Zip Code)_____

Telephone: _____(Message Phone)_____

Social Security No: (optional) _____

Job you are applying for: _____

Job Order Number: _____

Are you 16 years of age or older? Yes_____ No _____

Do you understand that this job is temporary? Yes_____No____

Did the Job Service explain the job to you? Yes_____ No_____

*If the job duties and working conditions have not been explained to you, you may wish to call 1-800-280-8063 for a full description of what you will be doing on the farm.*

Date you can begin work: _____

Signature of applicant: _____

Date of Application: _____

*We check employment eligibility of all employees.*

# Exhibit C

**Agricultural and Food Processing Clearance Order**
Pedido de Empleados para Agricultura y Procesamiento de Alimentos

**U.S. Department of Labor**
**Employment and Training Administration**
O.M.B. Approval No. 1205-0134, Expires 08/31/2009

| 1. Employer's Name and Address (Number, Street, City, State, Zip Code, and telephone number) Nombre y Dirección del Empleador (Número, calle, ciudad, código postal y teléfono) Shannon Produce Farm, Inc., 299 Racehorse Road, Sylvania, GA 30467, (912) 857-3876 | Industry Code / Código de Industria | Job Order # / No. Orden de Empleo GA 7698549 |
|---|---|---|

Occupational Title and Code / Título Ocupacional y Código
Farmworker

Clearance Order Issue Date / Fecha de Trámite:

**2: Location and Direction to Work Site / Dirección del lugar de trabajo**
Same as above / From Sylvania, GA., take Hwy 21 south for approx. 7.5 miles to Hunters Road.  Turn left on Hunters Road for 3.3 miles to Racehorse Road, first farm on left.

Job Order Expiration Date / Fecha de expiración:

6. Anticipated Period of Employment / Período Anticipado de Empleo
03/04/08 ☐ in QC
From / Desde: 08/01/2008  To / Hasta 11/01/2008
9/18/08 ☐

7. No. of Worker's Requested / No. de Trabajadores Pedidos        60

(see attachment / para más detalles vea ____)

**3. Location and Description of Housing / Dirección y Descripción de la Vivienda**

299 Racehorse Rd., SLyivania, GA 30467 - From Sylvania, GA., take Hwy 21 south for approx. 7.5 miles to Hunters Road.  Turn left on Hunters Road for 3.3 miles to Racehorse Road, first farm on left / 2 barracks type units

(see attachment / para más detalles vea ____)

8. Anticipated Hours of Work per Week / Horas Anticipadas de Trabajo por Semana                    Total:        40

| | | |
|---|---|---|
| Sunday / Domingo | 0 | Wednesday / Miercoles    7 |
| Monday / Lunes | 7 | Thursday / Jueves    7 |
| Tuesday / Martes | 7 | Friday / Viernes    7 |
| | | Saturday / Sabado    5 |

9. Collect Calls Accepted/Se Aceptan Llamadas a Cobrar:
Employer / El Empleador        Yes ☐  No ☒
Local Office/Oficina Local       Yes ☐  No ☐

**4. Board Arrangements / Arreglo de Alojamiento**
Housing provided at no cost to workers not reasonably able to return to residence.

(see attachment / para más detalles vea 1-B)

**5. Referral Instructions / Instruciones para el Referimiento de Candidatos**
Applicants can call the number above or fax referral to Shannon Produce Farm, Inc. at (305) 675-2256 or (912) 857-4809

(see attachment / para más detalles vea 3-I)

**10. Job Specifications / Descripción del Trabajo [Summary of Material Job Specifications in ENGLISH must be included inside this box]**
Harvest & field pack hand picked grapes, machine harvest grapes and hand load on pallets, hand harvest processing grapes; pack muscadines in clamshell containers mechanically; repack grapes by hand if mechanical packer is not functioning; harvest & field pack persimmon; farm vehicle and equipment operation and minor maintenance, vineyard maintenace; farm, field, packinghouse & winery sanitation duties. Work is outside.  Prolonged bending and reaching.

(see attachment / para más detalles vea 3-H)

**10 a.  Descripción del Trabajo / Job Specifications  [Summary of Material Job Specifications in SPANISH must be included inside this box]**
Cosechar y empacar en campo uvas del campo, cosechar las uvas por uvas y cargar a mano en las paletas, cosechar de mano las uvas para procesar; empacar las uvas en contendores por maquina o mano; reempacar uvas a mano si no está funcionando la empacadora mecánica; cosechar y empacar en campo el caqui; operación y mantenimiento secundario de vehiculo y equipo de granja, mantenimiento de viña; limpieza sanitaria de granja, campo, empacadora y lagar.  El trabajo es afuera.  Estar agachado y estirarse por mucho tiempo.

ETA 790 (Rev. July 2004)

(see attachment / para más detalles vea _____ )

### 11. Wage Rates, Special Pay Information and Deductions / Tarifa de Pago, Información Sobre Pagos Especiales y Deducciones (Rebajas)

| Crop Activities / Cultivos | Hourly Wage Salario por Hora | Piece Rate / Unit(s) Pago por Pieza / Unidad(es) | Special Pay (bonus, etc.) Pagos Especiales (Bono, ect.) | Deductions / Deducciones | YES SI | NO | Pay Period Periodo de Pago |
|---|---|---|---|---|---|---|---|
| Harvest & field pack hand picked table grapes | $ 8.53 | $ 4.00 / 20 lbs. | Discretionary bonus of up to $.50 / 20 lbs. | Social | x | | Weekly / Semanal |
| Hand harvest processing grapes | $ 8.53 | $ 1.50 / 20 lbs. | | Federal Tax Impuestos Federales | x | | |
| Repack muscadine grapes(if mechanical packer is not functioning) | $ 8.53 | $ 0.07 / quart | | State Tax Impuestos Estatales | x | | Bi-weekly / cada 2 sem. |
| Harvest & field pack persimmon | $ 8.53 | $ 1.00 / 20 lbs. | | Meals (comidas) | | x | |
| Farm, field, packinghouse & winery sanitation duties | $ 8.53 | $ | | Other (specify) / Otro | | x | Other / Otro |

The "X" for Bi-weekly appears at the far right of the Pay Period column.

More Details About the Pay/Más Detalles Sobre el Pago
Workers are guaranteed that their total earnings will be at least the prevailing wage for the crop activity or at least the AEWR, whichever is higher, for all hours worked in the payroll period.

(see attachment / para más detalles vea 1-I)

### 12. Transportation Arrangements / Arreglos de Transportación  (Please explain)
Employer will reimburse the reasonable cost of transportation and subsistence.

(see attachment / para más detalles vea 1-F)

### 13. Is it the prevailing practice to use Farm Labor Contractors (FLC) to recruit, supervise, transport, house, or pay workers for this (these) crop activity(ies)? Es la costumbre en el area de usar Contratistas Agrícolas para rectutar, supervisar, transportar, dar vivienda, ó pagarle a los trabajadores en este/estos tipo(s) de cosecha(s)/sembrado(s)? Yes/Si ☐  No ☒  If you have checked yes, what is the FLC  wage for each activity?/Si contesto "Si," cual es el salario que le paga al Contratista Agrícola para cada actividad?

14. Unemployment Insurance provided / Seguro por Desempleo:     Yes ☒     No ☐
15. Workers' compensation insurance provided / Indemnización por accidente de trabajo:     Yes ☒     No ☐
16. Are tools provided at no charge to the workers? / ¿Se le proveen las herramientas de trabajo a los trabajadores sin cargo alguno?     Yes ☒     No ☐

17. List any arrangements which have been made with establishment owners or agents for the payment of a commission or other benefits for sales made to workers.  (If there are no such arrangements, enter "None")/Indique todo acuerdo o convenio con los propietarios del establecimiento o sus representantes con respecto al pago de una comisión u otros beneficios por ventas hechas a los trabajadores. (Si no hay ningún acuerdo o convenio, indique "Ninguno")
None / Ninguno

18. List any strike, work stoppage, slowdown, or interruption of operation by the employees at the place where the workers will be employed.  (If there are no such incidents, enter "None")/ Enumere todo huelga, paro o interrupción de las operaciones por parte de los empleados en el lugar de empleo. (Si no hay, indique "Ninguno")
None / Ninguno

### 19. Address of Order Holding Office (include Telephone number)/Dirección de la Oficina donde se Radicó la Oferta (incluya número de teléfono)
Ms. Sherri Wilson, Georgia Department of Labor, 148 International Blvd., Rm. 450, Atlanta, Georgia  30303 (404 )232-3500

### 20. Name of Local Office Representative (include direct dial telephone number) / Nombre del Representante de la Oficina Local (Incluya numero de telefono)
Ms. Sherri Wilson, (404 ) 232-3500

### 21. Employer's Certification: This job order describes the actual terms and conditions of the employment being offered by me and contains all the material terms and conditions of the job.
Certificación del Empleador: Esta orden de trabajo describe los términos y condiciones de trabajo y contiene todos los materials, terminus, y condiciones ofrecidos.
Employer's Signature & Title/ Firma y Título del Empleador
James Shannon, Jr. - Owner                          6-17-208

READ CAREFULLY: In view of the statutory established basic function of the Employment Service as a no-fee labor exchange, that is, as a forum for bringing together employers and job seekers, neither the ETA nor the State agencies are guarantors of the accuracy or truth-fullness of information contained on job orders submitted by employers. Nor does any job order accepted or recruited upon by the One-Stop Career Center constitute a contractual job offer to which the One-Stop Career Center, ETA or a State agency is in any way a party.
LEASE CUIDADOSAMENTE: En vista de su función básica establecida estatutariamente el Servicio de Empleo es un  intercambio gratis de trabajo para juntar a los empleadores y trabajadores que buscan empleo, ni ETA ni las agencias del estado pueden garantizar la verdad y certeza de la información contenida en la Orden de Trabajo sometida por el Empleador. Tampoco, ninguna orden de trabajo aceptada o reclutada por el Servicio de Empleos constituye una oferta contractual de la cual ETA ni la agencia del Estado son parte

ETA 790 (Rev. July 2004)



RECEIVED
JUN 23 2008

U.S. DEPARTMENT OF LABOR
Employment and Training Administration

APPLICATION
FOR
ALIEN EMPLOYMENT CERTIFICATION

AGRICULTURE & ALIEN

OMB Approval No. 44-R1301

**IMPORTANT: READ CAREFULLY BEFORE COMPLETING THIS FORM**

PRINT legibly in ink or use a typewriter. If you need more space to answer questions in this form, use a separate sheet. Identify each answer with the number of the corresponding question. SIGN AND DATE each sheet in original signature.

To knowingly furnish any false information in the preparation of this form and any supplement thereto or to aid, abet, or counsel another to do so is a felony punishable by $10,000 fine or 5 years in the penitentiary, or both (18 U.S.C. 1001).

---

**PART A. OFFER OF EMPLOYMENT**

| 1. Name of Alien | (Family name in capital letter, First, Middle, Maiden) | | |
|---|---|---|---|

| 2. Present Address of Alien | (Number, Street, City and Town, State ZIP code or Province, Country) | 3. Type of Visa | (If in U.S.) |
|---|---|---|---|

The following information is submitted as an offer of employment.

| 4. Name of Employer   (Full name of Organization)  SHANNON PRODUCE FARM, INC. | 5. Telephone  (912) 857-3876 |
|---|---|

6. Address   (Number, Street, City and Town, State ZIP code)
299 RACEHORSE ROAD
SYLVANIA          GA        30467

7. Address Where Alien Will Work   (if different from item 6)

| 8. Nature of Employer's Business Activity  *Farm* | 9. Name of Job Title  FARMWORKER | 10. Total Hours Per Week | | 11. Work Schedule (Hourly) | 12. Rate of Pay | |
|---|---|---|---|---|---|---|
| | | a. Basic  40 | b. Overtime | 7:00 a.m.  3:00 p.m. | a. Basic  $ 8.53 per *Hourly* | b. Overtime  $ per hour |

13. Describe Fully the job to be Performed        (Duties)

Harvest & field pack hand picked grapes, machine harvest grapes and hand load on pallets, hand harvest processing grapes; pack muscadines in clamshell containers mechanically; repack grapes by hand if mechanical packer is not functioning; harvest & field pack persimmon; farm vehicle and equipment operation and minor maintenance, vineyard maintenace; farm, field, packinghouse & winery sanitation duties.

| 14. State in detail the MINIMUM education, training, and experience for a worker to perform satisfactorily the job duties described in item 13 above. | | | | | 15. Other Special Requirements |
|---|---|---|---|---|---|
| EDU-CATION (Enter number of years) | Grade School | High School | College | College Degree Required        (specify)  Major Field of Study | Work is outside. Prolonged bending and reaching. |
| TRAIN-ING | No. Yrs.  0 | No. Mos.  0 | Type of Training  0 | | |
| EXPERI-ENCE | Job Offered  Yrs.  0 | Mos.  0 | Related Occupation Number  Yrs.  0   Mos.  0 | Related Occupation        (specify)  0 | |

| 16. Occupational Title of Person Who Will Be Alien's Immediate Supervisor  ► FOREPERSON | 17. Number of Employees Alien Will Supervise  0 |
|---|---|

◄ ENDORSEMENTS   (Make no entry in section - for Government use only)

Date Forms Received

JUN 23 2008

| S.O. |
| R.O. |   | N.O. |
| Ind. Code |   | Occ. Code |
| Occ. Title |

Replaces MA 7-50A, B and C (Apr. 1970 edition) which is obsolete.

ETA 750 (Oct. 1979)

---

ETA Case Number  C-08156-09518

| 18. COMPLETE ITEMS ONLY IF JOB IS TEMPORARY | | | 19. IF JOB IS UNIONIZED (Complete) | |
|---|---|---|---|---|
| a. No. of Open-ings To Be Filled By Aliens Under Job Offer | b. Exact Dates You Expect To Employ Alien | | a. Number of Local | b. Name of Local |
| | From | To | | |
| 60 | 08/01/2008 | 11/01/2008 | | c. City and State |

| 20. STATEMENT FOR LIVE-AT-WORK JOB OFFERS   (Complete for Private Household ONLY) | | | | | |
|---|---|---|---|---|---|
| a. Description of Residence | b. No. Persons residing at Place of Employment | | | | c. Will free board and private room not shared with any-one be provided?   ("X" one) |
| ("X" one)  ☐ House  ☐ Apartment | Number of Rooms | Adults | BOYS | Children | Ages |
| | | | GIRLS | | ☐ YES  ☐ NO |

**21. DESCRIBE EFFORTS TO RECRUIT U.S. WORKERS AND THE RESULTS.** (Specify Sources of Recruitment by Name)

Job orders have been placed with the State Employment Service locally and entered into USDOL™s National Job Bank.  Ads have been placed in local newspapers.  Word of mouth has been extensively used, both in the community and with other similar business establishments.  None of these methods has produced results adequate to sustain our production during peakload seasons.  We will continue to pursue the above recruitment methods to attract domestic workers and will cooperate with the State Employment Service in any required recruitment activities.

**22.** Applications require various types of documentation.  Please read Part II of the instructions to assure that appropriate supporting documentation is included with your application.

## 23. EMPLOYER CERTIFICATIONS

By virtue of my signature below, I HEREBY CERTIFY the following conditions of employment.

a.  I have enough funds available to pay the wage or salary offered the alien.

b.  The wage offered equals or exceeds the pre-vailing wage and I guarantee that, if a labor certi-fication is granted, the wage paid to the alien when the alien begins work will equal or exceed the pre-vailing wage which is applicable at the time the alien begins work.

c.  The wage offered is not based on commissions, bonuses, or other incentives, unless I guarantee a wage paid on a weekly, bi-weekly, or monthly basis.

d.  I will be able to place the alien on the payroll on or before the date of the alien's proposed entrance into the United States.

e.  The job opportunity does not involve unlawful discri-mination by race, creed, color, national origin, age, sex, religion, handicap, or citizenship.

f.  The job opportunity is not:

(1)  Vacant because the former occupant is on strike or is being locked out in the course of a labor dispute involving a work stoppage.

(2)  At issue in a labor dispute involving a work stoppage.

g.  The job opportunity's terms, conditions and occupa-tional environment are not contrary to Federal, State or local law.

h.  The job opportunity has been and is clearly open to any qualified U.S. worker.

## 24. DECLARATIONS

DECLARATION OF EMPLOYER  ➤  Pursuant to 28 U.S.C. 1746, I declare under penalty of perjury the foregoing is true and correct.

| SIGNATURE | DATE |
|---|---|
| | 6-17-200 |

| NAME (Type or Print) | TITLE |
|---|---|
| JAMES SHANNON, JR. | OWNER |

AUTHORIZATION OF AGENT OF EMPLOYER  ➤  I HEREBY DESIGNATE the agent below to represent me for the purposes of labor certification and I TAKE FULL RESPONSIBILITY for accuracy of any representations made by my agent.

| SIGNATURE OF EMPLOYER | DATE |
|---|---|
| | 6-17-208 |

| NAME OF AGENT (Type or Print) | ADDRESS OF AGENT (Number, Street, City, State, ZIP code) | | |
|---|---|---|---|
| AGWORKS, INC. | POST OFFICE BOX 580 | | 408 WEST MA |
| | LAKE PARK | GA | 31636 |

ETA Case Number  **C-08156-09518**

Attachment to ETA 790
Shannon Produce Farm, Inc.
(08/01/2008-11/01/2008) #60 Workers
Screven County, Georgia

1.    **Contents of Job Offers and Request for Conditional Access**
    **A.    Equivalent Treatment of U.S. and Alien Workers**
    The employer will offer U.S. workers at least the same opportunities, wages, benefits, and working conditions as those that the employer offers or intends to offer to non-immigrant foreign workers.

    **B.    Housing**
    Conditional access into the intrastate or interstate clearance system is requested on behalf of Shannon Produce Farm, Inc., whose housing has not been inspected and found in compliance with applicable regulations and is made with the express understanding that the employers assume the obligation under the applicable regulations for timely compliance with applicable housing standards.

    If said housing is not ready on the applicable date, the workers will be housed in local hotels and motels.

    Employer's Signature                    Date

    Housing is provided at no cost to workers who are not reasonably able to return the same day to their place of residence. Housing is not provided to non-workers. No charge will be made for beds or cooking utensils and similar items furnished to workers to whom housing is provided hereunder unless unlawfully removed or damaged beyond normal wear and tear.  Housing includes free kitchen facilities. The kitchen and other common areas will be shared.  Housing provided will be shared without regard to sex.  Separate toilet facilities shall be provided by the employer for males and females.

    Workers who reside in such housing agree to be responsible for maintaining the housing in a neat and clean manner.  Before occupancy, housing shall be in compliance with OSHA housing standards.  Workers residing in the housing will be responsible for maintaining the compliance standards as posted in the housing unit.   If there is a problem with the housing, it is the worker's responsibility to mention it to the employer.

    Reasonable repair costs of damages or loss of property, other than that caused by normal wear and tear, will be deducted from the employee's pay if it is shown that the individual did the damages.  The employer will deduct repair costs from the employee's pay over whatever time period necessary so that such deductions will not result in a worker's wages going below the federal minimum wage.  The

employer retains possession and control of the housing premises at all times and workers, if provided housing under the terms of the work contract, shall vacate the housing promptly upon termination of employment.

Workers residing in employer's housing may have mail directed to them at the employer's address on attached ETA 790. Workers will be provided a telephone number where they may be contacted in case of emergency while residing in the housing. The employer will not accept collect calls.

Housing consists of 2 barracks type units.

Housing is located on premises: From Sylvania, take Hwy. 21 South 6 miles to Hunters Road.  Turn left on Hunters Road and go 3.3 miles east then take a right on Racehorse Road, first farm on left.

## C.    Workers' Compensation

Workers' compensation or equivalent insurance will be provided at no cost to all workers in the occupation for which workers are being sought.  The employer's proof of insurance coverage will be provided to the Regional Administrator before certification is granted.  If the workers compensation policy expires before the end of the certification period, the employer will furnish an updated proof of insurance.

## D.    Employer Provided Items

The employer will provide all supplies and equipment required in the performance of the specified work free of charge.  The employer will charge the worker for reasonable cost related to the worker's refusal or negligent failure to return any property furnished by the employer or due to such worker's willful damage or destruction of such property.

Visa (visa application fee and visa interview fee charged by the U.S. government), and border crossing (cost of the I-94 immigration document charged by the U.S. government) expenses will be reimbursed on or before the first payday to the extent necessary to ensure that employees are compensated at least the Federal minimum wage level for work performed during the first work week[1].

## E.    Meals

The employer will furnish free cooking and kitchen facilities to those workers who are entitled to live in the employer's housing, so the workers may prepare their own meals.  Workers will buy their own groceries.  Once a week, the employer will offer to those workers who wish to participate, free transportation to and from

---

[1]   These expenses shall not be paid by the employer if a final rule promulgated under the Administrative Procedures Act, that has not been enjoined, rules that an H2A employee's payment of such expenses does not constitute a violation of the Fair Labor Standards Act.

town where there are shopping stores, a post office and pay telephone. The Employer may provide meals and charge employee $9.90 per day. This is at the option of the Employer.

## F.     Transportation

The employer will not advance transportation and subsistence costs to worker for transportation to the place of employment.   The employer will not repay transportation for workers that do not have legal, suitable documents to comply with IRCA, are discharged for lawful job-related reason, apply for employment knowingly unable to perform the job activities, or who abandon employment. This applies only to workers for whom the employer is legally obligated to supply housing.  This benefit is not applicable to local workers who are not eligible for employer-provided housing.

Inbound transportation in the form of bus fare from the point of recruitment to Georgia will be reimbursed on or before the first payday to the extent necessary to ensure that employees are compensated at least the Federal minimum wage level for work performed during the first work week.  If the total amount of the reasonable transportation and subsistence expense are not reimbursed on or before the first payday, workers will be compensated upon completion of fifty percent of the employment period, or earlier, for any remaining expense not reimbursed on the first payday.   At the option of the employer, the entire reimbursement expense may be made on or before the first payday. This benefit is not applicable to local workers who are not eligible for employer-provided housing.

Upon completion of the employment period, the employer will pay for worker's reasonable cost of return transportation and subsistence to the place of recruitment, except when the worker will not be returning to the place of recruitment due to subsequent employment with another employer who agrees to pay such costs, the employer only pays for the transportation to the next job.

The amount of such transportation payment will be equal to the worker's actual transportation costs not to exceed the most economical and reasonable common carrier transportation charges for the distance involved. The employer reserves the right to charter or otherwise arrange transportation to the point of recruitment, or to offer any combination of payment, chartered and /or arranged transportation to the point of recruitment If the employer arranges transportation, and the worker does not use that transportation, the worker will be reimbursed only for the cost of the employer arranged transportation.

Employees eligible for reimbursement under the program will be provided subsistence reimbursement of a minimum of $9.90 per 24-hour travel period and the maximum amount will be up to the CONUS meal rate when receipts are provided (presently $39.00 per day).   This is in addition to reimbursing or providing inbound and outbound transportation costs.

The employer will offer free transportation for workers from the employer's housing to the daily work site. The use of the transportation by the worker is voluntary, and no worker will be required as a condition of employment to utilize the transportation offered by the employer.

## G.    Three-fourths Guarantee
The employer guarantees the worker an opportunity to work for at least three-fourths of the number of hours in the work days during which the period of the contract and all amendments thereof are in effect. The period of the contract is from the first work day after arrival of the worker (workers ready, willing, able and eligible to work) at the place of employment until the expiration date of the work contract. The offer of employment expires as of the date specified on the work contract and any extension. For the purpose of the 3/4 guarantee, a workday consists of seven hours Monday-Friday and five hours on Saturday.

If the workers are not offered the opportunity to work for three-fourths of such hours during this period, then the employer will supplement the pay of the workers as though the worker had actually worked. If the worker is paid on a piece rate or other similar incentive system, the worker's average hourly piece rate earning (if higher than the AEWR) will be used in determining the amount due under this guarantee.

The three-fourths guarantee and transportation reimbursements shall be void from the beginning should the worker voluntarily abandon employment before the end of the contract period or the worker is terminated for a lawful job-related reason.

The three-fourths guarantee will not apply to any H-2A worker who may be displaced by a U.S. worker under the fifty-percent rule.

## H.    Records, Earnings Statement and Deductions
The employer will keep and maintain adequate and accurate payroll and supporting records in accordance with the provisions of 20 CFR 655.102(b)(7). Each payday the employer will furnish to the worker one or more written statements showing name and payroll identification number; work starting and ending time; hours worked including hours offered and hours actually worked; reasons employee did not work when work was offered; hourly rate or piece rate (if piece rate, the number of units produced); total earnings; gross wages; itemization of all deductions; and net payment.

The employer will make the following deductions from the worker's wages FICA taxes and federal income tax (only from domestic workers) as required by law, cash advances and repayment of loans, repayment of overpayment of wages to the worker, payment for articles which the worker has voluntarily purchased from the employer, long distance telephone charges attributed to a worker, for meals when provided by the employer and any other deductions expressly authorized by the worker in writing. Workers will be charged for the destruction of property.

I.     **Rates of Pay**

This job includes activities paid by the hour and piece rate wages. Workers are guaranteed that their total earning will be at least the prevailing rate for the crop activity or at least the AEWR ($8.53), whichever is higher, for all hours worked in the payroll period. If the USDOL promulgates a new AEWR, it will become the guaranteed wage rate as of the published (effective) date.

| Activity | Piece Rate | Unit | Estimated Hourly Rate Equivalent |
|---|---|---|---|
| Harvest and field pack hand picked table grapes | $4.00[1] | 20 lbs. | $8.53 |
| Machine harvest grapes and hand load lugs on pallets | | | $8.53 |
| Hand harvest processing grapes | $1.50 | 20 lbs. | $8.53 |
| Pack muscadines in clamshell containers mechanically | | | $8.53 |
| Repack muscadine grapes By hand (only if mechanical packer is not functioning) | $0.07 | quart | $8.53 |
| Harvest and field pack persimmon | $1.00 | 20 lbs. | $8.53 |
| Farm vehicle and equipment operation and minor maintenance | | | $8.53 |
| Vineyard maintenance | | | $8.53 |
| Farm, field, packinghouse and winery sanitation duties | | | $8.53 |

---

[1]     The employer may also pay workers that complete the season a discretionary bonus at the end of the season as an addition to the piece rate for harvesting and field packing table grapes of up to $0.50 per 20 lbs.

**J.     Frequency of Pay**

The payroll period shall be bi-weekly.

**K.     Contract Impossibility**

If, before the expiration date specified in the work contract, the services of the worker are no longer required for reasons beyond the control of the employer due to fire, hurricane, or other Act of God which makes the fulfillment of the contract impossible, the employer may terminate the work contract. In the event of such termination of a contract, the employer shall fulfill the three-fourths guarantee for the time that has elapsed from the start of the work contract to its termination.

**L.     Copy of Work Contract**

A copy of the work contract and work rules will include the terms and conditions of employment specified in the regulations. A copy of such contract will be provided to the worker no later than the day on which the worker begins employment.

**M.     Occupational Qualifications**

The employer will not require workers to have a specified level of education or experience.

**2.     Assurances**

The employer agrees to abide by the assurances specified in the conditions of 20 CFR Part 655, Subpart B, including the regulations at 20 CFR 655.103. The working conditions will comply with applicable Federal and State minimum wage, child labor, social security, health and safety, farm labor contractor registration and other employment-related laws. The employer is an Equal Employment Opportunity employer.

**3.     Other Conditions of Employment**
**A.     Termination & Discipline**

The employer may terminate the worker for any lawful job-related reason and will notify the local office when/if such a termination occurs. The employer may discipline the worker including requiring the worker to leave (without pay) the field for a period determined by the foreman, unpaid suspension from employment for up to three days, or termination of employment. Workers will be terminated or disciplined for failure to follow work rules (see attachments).

In the event of termination resulting from reasons beyond the control of the employer due to fire, hurricane, or other Act of God which makes fulfillment of the contract impossible, and the employer was legally obligated to provide housing, the employer will reimburse the reasonable transportation and subsistence expense from the point of recruitment to the workplace. The employer will also pay or provide the reasonable cost of return transportation and subsistence to the place of recruitment, or to the next job when the subsequent employer has agreed to pay the return transportation. This benefit does not apply to workers

who voluntarily quit employment before the end of the contract or who are terminated for cause.

**B.    Injuries**
Workers will be covered by Worker's Compensation Insurance or equivalent employer provided insurance for injuries arising out of and in the course of employment.  Employer's proof of insurance coverage will be provided to the Regional Administrator before certification is granted. Worker shall report any injury as soon as possible.

**C.    Employer Obligation If Employment Is Extended**
No extension of employment beyond the period of employment specified in the job order shall relieve the employer from paying the wages already earned.

**D.    Notice of Changes in Employment Terms and Conditions**
The employer will expeditiously notify the Appropriate Regional Administrator, ETA, by telephone immediately upon learning that a crop is maturing earlier or later, that weather conditions, over recruitment, or other factors have changed the terms and conditions of employment.

If the employer fails to notify the order holding office at least 10 working days prior to the original date of need, the employer will provide workers referred through the Agricultural Recruitment System a full week's work (as stated on the ETA 790) the week beginning with the anticipated date of need.  For this situation, the employer will pay eligible workers referred through the interstate clearance system the AEWR for the first week starting with the original anticipated date of need.  However, the employer may require the workers to perform alternative work (general farm labor and maintenance activities) if the guarantee cited is invoked.  If the worker fails to notify the order holding office of continued interest in the job no sooner than nine working days and no later than five days before the date of need, the worker will be disqualified from the above mentioned assurance.

**E.    Outreach Workers**
Outreach workers shall have reasonable access to workers pursuant to 20 CFR 653.107 and 20 CFR 653.501.

**F.    Training**
The training period for all crop activities is 2 days starting with the first day of employment to acclimate the worker to the physical demands of farm work and to familiarize workers with job specifications and to demonstrate proper harvest methods and other crop specific issues.  After completion of the training period, workers are to keep up with fellow workers; and not detrimentally affect other workers productivity.

### G.    Days and Hours of Work

Workers will report to work at the designated time and place as directed by the grower each day.   The standard work week is seven hours per day Monday-Friday and five hours on Saturday; however, workers may be requested to work more hours per day but will not be required to do so.  Workers may be requested to work on federal holidays and on the Sabbath but will not be required to do so. Workers may volunteer to work additional hours when work is available.

Workers should expect occasional periods of little or no work because of weather, crop or other conditions beyond the employer's control.  These periods can occur anytime throughout the season.

Workers are not required to work on Sabbath or on federal holidays which are New Year's Day, January 1; Martin Luther King, Jr.'s birthday, the third Monday in January; Washington's birthday, the third Monday in February; Memorial Day, the last Monday in May; Independence Day, July 4; Labor Day, the first Monday in September; Columbus Day, the second Monday in October; Veteran's Day, November 11; Thanksgiving Day, the fourth Thursday in November; and Christmas Day, December 25.

### H.    Job Specifications

Most job duties listed below require workers to work in a bent, stooping or kneeling position and in extremely hot or wet weather.  Workers must use care when performing duties listed below not to break or damage the plants.  All operations must meet standards contained in the employer's contract with the buyer.

Operational specifications can change during the season due to crop or market condition. Workers will be expected to conform to the specific instructions given for each day's work.  The employer, supervisor or a designated employee will provide instructions and general supervision.  Daily individual work assignments, crew assignments and work location assignments will be made by the employer or supervisor as the needs of the operation dictate.  Workers may be assigned a variety of duties in any given day and different tasks on different days.

Hand harvest and pack grape:  Worker will proceed down row and pick grapes of correct size, color and ripeness.  Worker will not detach stem from grape in harvest process. Worker will place grapes or grape clusters into harvest container until the correct level of fullness is reached.  Worker will carry container to designated location for emptying or exchange with empty container.  Worker will return to row and repeat process.  Worker will not damage grapevine or grapes.  Worker will clean grapes as shown, discarding damaged grapes and place appropriate amount of product into package, seal and stack.

Machine harvest grapes: Monitor fruit off belt, remove debris, transfer lugs (boxes) to pallet, transfer pallet to trailer.

Grade and pack processing grapes:   Mechanically pack grapes in clamshell containers.   Sort, count, check, weigh and mark boxes/flats.   Stack, load and unload at the packing house.   Some grapes will be taken to the winery and dumped into a crusher where they are mechanically pressed.

Vineyard maintenance:   Workers may prune vines or trees, irrigate, and control weeds.

Persimmon - Workers will pick persimmon of the correct size and maturity, being careful not to damage tree branches, and place into picking container until the correct level of fullness is reached.  Fruit is tissue wrapped and boxed in the field.

Farm vehicle and equipment operation and maintenance:  Worker will drive truck from field to the packing shed and return to field.  Driver will drive bus or other transportation vehicle from the housing unit to the worksite and return to the housing units.  Worker may also drive to town in transportation vehicles to allow workers to shop.  Worker may do repair work on the farm and transportation vehicles and other agricultural equipment.  Worker may drive the tractor.

Farm, field, packinghouse & winery sanitation duties:   Workers may be responsible for picking up trash, cleaning bathrooms, sweeping floors and other farm, field, packinghouse and winery sanitation duties including cleaning tanks and equipment.

### I.      Referral Instructions

Referrals of potential U.S. workers will be accepted from the local Job Service Office, through word-of mouth, walk-up and other sources.  Workers should be fully apprised by the local office of the terms, conditions and nature of employment prior to referral.  Only workers meeting all qualifications; including availability to complete the work contract, work outside and prolonged bending and reaching; on the job order should be referred by the Job Service Office.  The local office will be contacted periodically to obtain referral information.  In the event the employer receives phone calls or walk-up workers interested in the job offer, the employer will inform the workers of the job requirements and duties and will consider the worker for the job based on the worker's qualifications.  Potential workers may fax resumes or screening applications directly to Shannon Produce Farm, Inc. at (305) 675-2256 or (912) 857-4809 or call the farm for an interview at the number listed on the ETA 790 or contact the Ms. Sherri Wilson, Georgia Department of Labor, 148. International Blvd., Rm. 450, and Atlanta, Georgia 30303, telephone (404) 232-3500. The U.S. Department of Labor will be notified of the results

### J.      Other

There are not any strikes, work stoppage, slowdowns or interruption of operations by employees at the place where the workers will be employed. There are not any arrangements made with the grower for the payment of a commission or other benefits for sales made to the workers.  The statute of limitations for this order will be two years.

## WORK RULES

The following rules are intended to provide standards of conduct expected of workers employed under this contract. Violations of these rules or other lawful, job-related employer requirements will be considered grounds for termination. In cases of less serious violations, penalties such as suspension without pay for up to three (3) days will be imposed. Workers are expected to comply with ALL rules related to discipline, attendance, work quality/quantity and the care/maintenance of all property.

1.     Workers who perform fraudulent/sloppy work, as defined in Section 3-H, Job Specifications, will be suspended without pay for the remainder of the workday or up to three (3) days based on the supervisor's consideration of the degree of infraction, the worker's prior record, and other relevant factors. Subsequent offenses may result in termination/discharge.

2. No use or possession of alcohol or unlawful drugs is permitted during work time or during any workday or before work is completed for that day (such as during meal or break periods). Workers may not report for work under the influence of alcohol or illegal drugs. Illegal drugs may not be used nor kept on the employer's premises.

3. Excessive absences or tardiness will not be permitted. Excessive absence is defined as three consecutive days of unexcused absence or five unexcused absences within a 30-day period.

4. Workers are expected to maintain their living quarters to OSHA standards posted on the property and shall promptly report problems to employer. Workers shall cooperate with other workers assigned to the same housing in maintaining kitchen, dining, bathroom and living areas to OSHA standards.

5.     Workers living in employer-provided housing that are assigned bunk beds may not separate nor move bunk beds.

6. Workers living in employer-provided housing may not cook in sleeping rooms or any other non-kitchen areas.

7.     Workers may not repeated drop paper, cans, bottles or other trash in fields, packinghouses or housing areas. Trash and waste receptacles must be used.

8. With the exception of the worker's assigned housing and/or work area/field, workers may not enter employer's premises without authorization by the person in charge.

9. With the exception of the worker's assigned housing, workers may not enter the employer's premises at times other than during hours the employee is scheduled to work.

10. Workers may not begin work prior to the scheduled starting time or continue working after stopping time unless authorized by the employer.

11. Workers may not abuse/extend break periods which may be provided or take unauthorized breaks from work.

12. Workers may not deliberately restrict production.

13. Workers may not engage in horseplay, scuffling, throwing things, wasting time or loitering during work hours. Workers may be discharged for fighting on the employer's premises at any time.

14. Workers may not post nor remove any notices, signs or other instructions from the employer's property.

15. Workers may be discharged if they steal from fellow workers or from the employer.

16. Workers may not falsify personnel, medical, production or other work-related records.

17. Workers may not willfully abuse or destroy any machinery, equipment, tools or other property belonging to the employer or other employees.

18. After completion of the training period, workers are to keep up with fellow workers; and not detrimentally affect other workers productivity.

19. Workers may not commit acts of insubordination.

20. Workers may not interrupt other workers rest/sleep periods by excessive or unnecessary noise or commotion.

21. Workers may not have guests in employer-provided housing past 10:00 pm, except on Saturday, not past 12:00 midnight. Workers and/or their guests may not engage in indecent, immoral or illegal conduct at any time on the employer's premises.

22. Repeated failure to follow instructions, obey safety requirements, and equipment and vehicle operation instructions may result in termination.

23. Any worker who repeatedly impedes the progress of the group by tardiness, leaving early, lax adherence to picking standards, or rough handling of produce may be terminated.

24. No firearms or other weapons may be brought onto the employer's premises AT ANY TIME.

FAILURE TO COMPLY WITH THE ABOVE WORK RULES MAY RESULT IN TERMINATION/DISCHARGE.

IF YOU DO NOT UNDERSTAND ANY OF THE ABOVE RULES, ASK YOUR SUPERVISOR FOR AN EXPLANATION.

## Agricultural Work Agreement

Employer:   Shannon Produce Farm, Inc.
Employee:   _____  _____

The employee agrees to diligently and faithfully perform all the assigned duties within the job description under the direction of the employer's supervisors.  This employment shall be governed also by the following terms and conditions:

1.   **Name, Address, Telephone Number and Place of Work of Employer:**
           Shannon Produce Farm, Inc.
           299 Racehorse Road
           Sylvania, Georgia  30467
           (912) 857-3876
2.   **Name and Address of Employee at Time of Recruitment:**
     **Address:**                                    **Telephone:**
     **City, State, Zip**

3.   **Place of Recruitment:**
        _____, GA;   _____ Other;   _____, Mexico

4.   **Wages:** $8.53/hour and/or piece rates

5.   **Area of Employment:** Work will be performed in:  Screven County, Georgia

6.   **Period of Employment:**  Begins:   08/01/2008    Ends:  11/01/2008

7.   **Full Crop Commitment:**
     This is regular work for the full period of employment.  The employee agrees to work for the employer seven hours on Monday-Friday and five hours on Saturday.  The employee understands that if she/he quits or is terminated for cause prior to the completion of the employment period, she/he may not be eligible for rehire in the future, unless the termination is a mutual agreement between the employer and employee.

8.   **Work Rules, Discipline and Termination:**
     A copy of the work rules will be provided to workers by the employer no later than on the day that work commences.  The work rules are intended to provide guidance to workers of the standards of conduct expected of them.  Violation of these rules or other lawful job-related employer requirements will be considered grounds for termination.  In cases of less serious violations, workers will be penalized such as suspension from work without pay for up to three days.  Workers are expected to comply with all rules relating to discipline, attendance, work quality and quantity, and the care and maintenance of all property.

Date employee provided a copy of contract, work rules and work agreement: _____,
2008.

(SIGN)

_____          _____
Employee            (date)                       Employer            (date)

# AGENT AGREEMENT

**Shannon Produce Farm, Inc.**
**299 Racehorse Road**
**Sylvania, Georgia  30467**

**Re:  H2A Program**

**TO WHOM IT MAY CONCERN:**

   I, the Undersigned, name and appoint AgWorks, Inc., P.O. Box 580, Lake Park, Georgia, 31636, my agent in my H2A application.  AgWorks, Inc. is authorized to act on my behalf.  I assume full responsibility for the accuracy of the application and for all representations made to my agent, and to indemnify and hold AgWorks, Inc. harmless for any judgments, attorney's fees and costs as a result of my failure or alleged failure to follow the law pertaining to my employment of workers hereunder.  All information is to be released to my agent hereunder.  My agent will file the application, publish the advertisements, prepare my petition to obtain the benefit being sought, and administer my paperwork to qualify me for the H2A program.  My agent will cooperate with the government in all matters.  A copy of this agreement shall be as effective for all purposes as an original.
   Send all correspondence on all matters to:

AgWorks, Inc.
P.O. Box 580
408 West Marian Ave.
Lake Park, Georgia 31636
(229/559-6879)

Shannon Produce Farm, Inc.

By: _____    6-12-2008 _____
         (Signature)                                         (Date)

# FAX TO: Shannon Produce Farm, Inc. @ (305) 675-2256 or (912) 857-4809

Name of Referring Agency: (State)_____
Agency Representative:     _____
Phone/FAX:                _____/_____

# REFERRAL FOR JOB ORDER NO. _____

Applicant Name: _____

  Address: _____

            _____(Zip Code)_____

  Telephone: _____(Message Phone)_____

  Social Security No: (optional) _____

Job you are applying for: _____

Job Order Number:      _____

Are you 16 years of age or older?  Yes____  No _____

Do you understand that this job is temporary?  Yes_____No____

Did the Job Service explain the job to you?  Yes_____  No_____

Date you can begin work: _____

Signature of applicant:   _____

Date of Application:     _____

Optional:  How did you hear about our job opening?

| | | | | |
|---|---|---|---|---|
| Radio | _____ | Help Wanted Posting | _____ |
| Newspaper | _____ | Internet | _____ |
| Referred by friends | _____ | Other _____ | |
| Unemployment office | _____ | | |
| State Workforce Agency | _____ | | |

U.S. Department of Justice
Immigration and Naturalization Service

# Notice of Entry of Appearance
## as Attorney or Representative

**Appearances** - An appearance shall be filed on this form by the attorney or representative appearing in each case. Thereafter, substitution may be permitted upon the written withdrawal of the attorney or representative of record or upon notification of the new attorney or representative. When an appearance is made by a person acting in a representative capacity, his personal appearance or signature shall constitute a representation that under the provisions of this chapter he is authorized and qualified to represent. Further proof of authority to act in a representative capacity may be required. **Availability of Records** - During the time a case is pending, and except as otherwise provided in 8 CFR 103.2(b), a party to a proceeding or his attorney or representative shall be permitted to examine the record of proceeding in a Service office. He may, in conformity with 8 CFR 103.10, obtain copies of Service records or information therefrom and copies of documents or transcripts of evidence furnished by him. Upon request, he/she may, in addition, be loaned a copy of the testimony and exhibits contained in the record of proceeding upon giving his/her receipt for such copies and pledging that it will be surrendered upon final disposition of the case or upon demand. If extra copies of exhibits do not exist, they shall not be furnished free on loan; however, they shall be made available for copying or purchase of copies as provided in 8 CFR 103.10.

| In re: I-129 Petition for H2A workers | Date: |
| | File No. C-08156-09518 |

I hereby enter my appearance as attorney for (or representative of), and at the request of the following named person(s):

| Name: Shannon Produce Farm, Inc. | ☑ Petitioner  ☐ Applicant  ☐ Beneficiary |

| Address: (Apt. No.) | (Number & Street) 299 Racehores Rd. | (City) Sylvania | (State) GA | (Zip Code) 30467 |

| Name: | ☐ Petitioner  ☐ Applicant  ☐ Beneficiary |

| Address: (Apt. No.) | (Number & Street) | (City) | (State) | (Zip Code) |

*Check Applicable Item(s) below:*

☑ 1. I am an attorney and a member in good standing of the bar of the Supreme Court of the United States or of the highest court of the following State, territory, insular possession, or District of Columbia

Georgia    Georgia Supreme Court    and am not under a court or administrative agency
Name of Court
order suspending, enjoining, restraining, disbarring, or otherwise restricting me in practicing law.

☐ 2. I am an accredited representative of the following named religious, charitable, social service, or similar organization established in the United States and which is so recognized by the Board:

☐ 3. I am associated with
the attorney of record previously filed a notice of appearance in this case and my appearance is at his request. (*If you check this item, also check item 1 or 2 whichever is appropriate.*)

☐ 4. Others (Explain Fully.)

| SIGNATURE | COMPLETE ADDRESS c/o AgWorks, Inc. P.O. Box 580 Lake Park, Georgia 31636 |
| NAME (Type or Print) George H. Wynn | TELEPHONE NUMBER (229) 559-8731 ext. 24 |

*PURSUANT TO THE PRIVACY ACT OF 1974, I HEREBY CONSENT TO THE DISCLOSURE TO THE FOLLOWING NAMED ATTORNEY OR REPRESENTATIVE OF ANY RECORD PERTAINING TO ME WHICH APPEARS IN ANY IMMIGRATION AND NATURALIZATION SERVICE SYSTEM OF RECORDS:*
George H. Wynn

(Name of Attorney or Representative)

*THE ABOVE CONSENT TO DISCLOSURE IS IN CONNECTION WITH THE FOLLOWING MATTER:*

I-129 petition of Shannon Produce Farm, Inc.

| Name of Person Consenting James Shannon, Jr. | Signature of Person Consenting | Date 6-17-2007 |

(NOTE: Execution of this box is required under the Privacy Act of 1974 where the person being represented is a citizen of the United States or an alien lawfully admitted for permanent residence.)

This form may not be used to request records under the Freedom of Information Act or the Privacy Act. The manner of requesting such

AGRICULTURE

Now hiring 60 temp. workers (08/01/2008-11/01/2008) to harvest & pack grapes, and do farm, field, packinghouse & winery sanitation in Screven County, GA. Three-quarters of an average of 40 hrs/wk guaranteed. All tools, equipment provided at no cost. Housing provided at no cost if outside commuting area. If applicable, transportation and subsistence expense to the job will be paid upon completion of 50% of the employment period, or earlier. $8.53/hr. or piece rates set and agreed to prior to work including $0.07/quart to repack grapes and $4.00/20lbs. to harvest & field pack table grapes, whichever is higher. No exp. or edu. req'd. Work is outside. Prolonged bending and reaching. Apply for this job at the nearest GA Employment service office using job listing number _____ for Shannon Produce Farm, Inc.