UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA
STATESBORO DIVISION

JOSE MARCIAL REYES-FUENTES, et al.,

Plaintiffs,

v.  608CV059

SHANNON PRODUCE FARM, INC., et al.

Defendants.

## ORDER

### I. BACKGROUND

Plaintiffs in this Fair Labor Standards Act (FLSA) suit are fourteen Mexican farm workers who were legally employed in the United States between 2000 and 2005 on defendant Shannon Produce Farm, Inc.'s Georgia farm (the Shannon farm). Doc. #1 at 3, 13. They have brought this claim under 29 U.S.C. § 215(a)(3) alleging that defendants (collectively Shannon Produce) refused to rehire them in retaliation for a 2005 FLSA lawsuit against Shannon Produce Farm to which the plaintiffs in this case were parties. *See Morales-Arcadio v. Shannon Produce Farm, Inc.,* No. 6:05-CV-062 (S.D.Ga. filed 7/11/05). Shannon Produce has moved to dismiss under F.R.Civ.P. 12(b)(6). Doc. # 14-2.

Plaintiffs were employed under the federal "H-2A" program which allows a U.S. agricultural employer to import temporary foreign workers (H-2A workers) if the Department of Labor (DOL) certifies that a shortage of labor and other conditions exists in the employer's local market. Doc. # 1 at 3; *see* 8 U.S.C. §§ 1101(a)(15)(H)(ii)(a) & 1188(a)(1). In order for visas to be issued to prospective H-2A workers, an employer must sign and fax a list of workers to be hired directly to the U.S. Consulate in Mexico, which then interviews each worker and issues a visa. Doc. # 1 at 8. If the worker's name is not placed on the list, he will not be issued a visa and cannot enter the U.S. *Id.*

Having previously worked on the Shannon farm, plaintiffs sought to be rehired under the H-2A program during and after the *Morales-Arcadio* litigation. *Id.* at 2. They claim that in retaliation for their participation in that lawsuit, Shannon Produce omitted their names from the list of requested H-2A workers sent to the U.S. Consulate or otherwise denied them employment during the 2006-2008 growing seasons, *id.* at 14, and instead hired only workers who had not participated in the *Morales-Arcadio* litigation. *Id.* at 2, 11-14.

Plaintiffs seek damages as well as declaratory and injunctive relief. *Id.* at 15-16. Shannon Produce has filed a Motion to Dismiss under F.R.Civ.P. 12(b)(6), arguing that the plaintiffs' claims are barred on the ground that the FLSA does not have extraterritorial reach. Doc. # 14-2. Thus, the question before the Court is whether the FLSA's § 215(a)(3) anti-retaliation provision provides a cause of action to foreign workers located abroad who are denied re-hire in retaliation for exercising their rights under the FLSA.

### II. STANDARD OF REVIEW

In considering this Rule 12(b)(6) Motion,[1] all facts in the plaintiffs'

---

[1] Motions to dismiss based on extraterritoriality grounds have been brought as subject matter jurisdiction challenges under F.R.Civ.P. 12(b)(1), *see Shekoyan v. Sibley Int'l Corp.,* 217 F.Supp.2d 59, 68-69 (D.D.C. 2002), and also as challenges pursuant to F.R.Civ.P. 12(b)(6) for failure to state a claim, *see Chaudhry v. Mobil Oil Corp.,* 186 F.3d 502, 504 (4th Cir. 1999). It is unclear which basis Shannon Produce relies upon since it asks this Court to dismiss

Complaint "are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto." *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993). A complaint will not be dismissed so long as it contains factual allegations sufficient "to raise a right to relief above the speculative level...." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007) (citations omitted).

III. ANALYSIS

Before addressing the substance of Shannon Produce's arguments, the Court steps back to consider the text and purpose of the FLSA's anti-retaliation provision as well as the scope of the FLSA's coverage. Section 215(a)(3) of the FLSA prohibits retaliation against any employee who has filed a complaint or lawsuit under the FLSA. 29 U.S.C. § 215(a)(3).[2] This provision is crucial to the FLSA's enforcement. Rather than implementing a detailed program of federal supervision to enforce the FLSA, Congress chose to rely upon information and complaints from employees seeking to vindicate their rights. *Mitchell v. Robert DeMario Jewelry, Inc.*, 361 U.S. 288, 292 (1960). "Plainly, effective enforcement could thus only be expected if employees felt free to approach officials with their grievances.... [I]t needs no argument to show that fear of economic retaliation might often operate to induce aggrieved employees quietly to accept substandard conditions." *Id.*

The scope of individuals protected by the FLSA is broad. It covers migrant H-2A workers, *Arriaga v. Florida Pacific Farms, L.L.C.*, 305 F.3d 1228, 1235 (11th Cir. 2002), and even undocumented aliens working in the United States illegally, *Patel v. Quality Inn South*, 846 F.2d 700, 703 (11th Cir. 1988). A plaintiff's citizenship status does not deprive him of FLSA protection, including protection from retaliation, as "Congress has made manifest its intent that all workers, including undocumented aliens, have the right to be free from unlawful retaliation pursuant to the FLSA." *Contreras v. Corinthian Vigor Ins. Brokerage, Inc.*, 25 F.Supp.2d 1053, 1058 (N.D.Ca. 1998). Thus, the issue before this Court does not hinge on the citizenship status of the plaintiffs. Something else must except these plaintiffs from the protections of the FLSA or remove the defendants' conduct from the FLSA's reach.

Against this backdrop, Shannon Produce makes three arguments: (1) that the text of FLSA § 213(f) exempts activities that occur outside the U.S. from coverage, doc. # 14-2 at 7-10; (2) that a general presumption against extraterritorial application of statutes bars plaintiffs' claim, *id.* at 4-7; and (3) that the alleged retaliation took place outside the U.S., *id.* at 10-11.

A. Section 213(f)

First, the textual argument. Section 213(f) of the FLSA states that "[t]he provisions of sections 206, 207, 211, and 212 of [the FLSA] shall not apply with respect to any employee whose services

---

plaintiffs' claim "pursuant to [12(b)(6)] for lack of subject matter jurisdiction." Doc. # 14-2 at 1. The Court will treat this motion as a 12(b)(6) motion. While the 12(b)(1) & (6) standards are slightly different, in this case the outcome of the defendants' motion would be the same under either.

[2] The text of the statute states "(a) it shall be unlawful for any person ... (3) to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee." 29 U.S.C. § 215(a)(3).

during the workweek are performed in a workplace within a foreign country...." 29 U.S.C. § 213(f). Shannon Produce argues that this section bars plaintiffs' § 215(a)(3) retaliation claim because § 213(f) "explicitly limits the FLSA to conduct that occurs within the U.S" – including retaliation. Doc. # 14-2 at 7.

The defendants' §213(f) argument suffers from two flaws. First, § 213(f) lists four specific FLSA provisions that do not apply to employees in a foreign workplace – those governing minimum wage (§ 206), overtime (§ 207), recordkeeping (§ 211), and child labor (§ 212). The § 215(a)(3) retaliation provision is noticeably absent. "[W]here the legislature has included certain exceptions to [a statute], the doctrine of *expressio unis est exclusio alterius* counsels against judicial recognition of additional exceptions." *Allstate Life Ins. Co. v. Miller*, 424 F.3d 1113, 1116 n. 3 (11th Cir. 2005). This doctrine of statutory construction counsels against construing § 213(f) to prohibit extraterritorial application of § 215(a)(3). Furthermore, "[b]readth of coverage was vital to [the FLSA's] mission," and the Supreme Court has refused to adopt coverage exceptions to the FLSA by implication noting that the exceptions that Congress wrote into the Act were "narrow and specific." *Powell v. United States Cartridge Co.*, 339 U.S. 497, 516-517 (1950). Although Shannon Produce claims that § 213(f) "has also been interpreted to prohibit the extraterritorial application of other provisions of the FLSA...," the cases that it cites deal only with the FLSA §§ 206, 207, 211, and 212 – namely, those sections specifically identified in § 213's text. Doc. # 14-2 at 7-8. The Court will not read an additional exception into § 213(f) that Congress did not include.

The second but perhaps more glaring defect in the defendants' construction of § 213(f) is that by its plain language it exempts only employees who performed services "in a *workplace* within a foreign country...." 29 U.S.C. § 213(f) (emphasis added). The plaintiffs were employees who performed services in Georgia. Doc. # 1 at 1-7. Yet, Shannon Produce insists that "[f]or purposes of determining jurisdiction, it is the location where the allegedly retaliatory act occurred – here, in Mexico, where the applicants were allegedly denied re-employment – not the location of the decision that governs." Doc. # 14-2 at 10. That assertion is inconsistent with the plain language of § 213(f) as well as case law holding that the location of the workplace controls whether § 213(f)'s extraterritoriality exemption applies.

Prior to 1984, the Age Discrimination in Employment Act (ADEA) incorporated by reference FLSA § 213(f). *Lopez v. Pan Am World Servs., Inc.*, 813 F.2d 1118, 1119 (11th Cir. 1997). Given the dearth of FLSA cases construing § 213(f), the Court is forced to rely on pre-1984 ADEA cases interpreting § 213(f) as it was incorporated into that Act. In deciding whether § 213(f)'s extraterritorial exemption barred a pre-1984 ADEA discrimination suit, the Eleventh Circuit concluded that "[b]ased on the plain language of §[2]13(f) of [the] FLSA, we agree that the location of the work station should be the controlling factor for discerning the ADEA's extraterritorial effect." *Id.* at 1120 (*citing Cleary v. U.S. Lines, Inc.*, 728 F.2d 607, 610 n. 6 (3d Cir. 1984) ("The language of section 213(f) ... looks to the place of employment, not the place where the decision was made.")). It cited with approval a district court case holding that the location of the hiring or termination decision is irrelevant and that only the location of the work station should

3

be considered. *Id.* (*citing Wolf v. J.I. Case Co.*, 617 F.Supp. 858, 863 (E.D.Wisc. 1985)). Thus, the location of the work station alone controls whether § 213(f) applies. Because the plaintiffs' work station was in Georgia, § 213(f)'s coverage exemption simply does not apply to them.

The omission of § 215(a)(3) from the scope of § 213(f)'s extraterritorial exemption is also consistent with the purpose of § 213(f). Upon §213(f)'s adoption "Congress noted that the [FLSA] was obviously 'designed to apply to a United States economy, [and its application] to overseas areas is usually inconsistent with local conditions of employment ... and is contrary to the best interest of the United States and the foreign areas.' " *Cruz v. Chesapeake Shipping, Inc.*, 932 F.2d 218, 226 (3d Cir.1991) (*quoting* S. REP. NO. 85-987 (1957), *as reprinted in* 1957 U.S.C.C.A.N. 1756, 1756-57). Thus, § 213(f) exempted from extraterritorial application the substantive "conditions of employment" codified in §§ 206, 207, 211, and 212, because those conditions would be disruptive if applied to foreign regions. *Cf. Pfeiffer v. Wm. Wrigley Junior Co.*, 755 F.2d 554, 556 (7th Cir. 1985) (Section 213(f) was "drafted with reference to wage and hour violations only....") For example, requiring an American factory operating in a Third World country to pay its employees the U.S. minimum wage pursuant to § 206 might wreak havoc on the local labor market. *See* S. REP. NO. 85-987, at 3 (1957) ("To pay the minimum wage specified in [FLSA § 206] would often give local laborers wages several times higher than they had earned before.... Moreover, the payment of the minimum specified in the act may disturb the local economy by drawing workers away from vital tasks....")

In contrast to the specific provisions listed in § 213(f), § 215(a)(3) does not establish any workplace conditions that might interfere with local economic conditions. It simply protects an employee if he complains that his employer has failed to abide by the FLSA provisions that apply to the employer. This distinction provides an explanation for why § 213(f) does not encompass § 215(a)(3) and further supports the Court's conclusion that § 213(f) does apply to FLSA retaliation claims.

### B. General Presumption Against Extraterritoriality

Shannon Produce also argues that, aside from § 213(f), a general presumption against extraterritoriality causes the plaintiffs' claim to fail. That presumption is based on the "longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States." *EEOC v. Arabian American Oil Co. (Aramco)*, 499 U.S. 244, 248 (1991) (quotes and cite omitted)). This principle is intended "to protect against unintended clashes between our laws and those of other nations which could result in international discord." *Id.* at 248. Congress has the power to give its laws extraterritorial reach, but whether it has done so is a question of statutory interpretation. *Id.*

The presumption against extraterritoriality should only be read into a statute when Congress has not expressed its intent on the matter. *See id.* But in the FLSA, Congress has specifically defined the statute's extraterritorial reach through § 213(f) (entitled "Exemptions: Employment in foreign countries and certain United States territories"). 29 U.S.C. § 213(f). When Congress has created specific exemptions from a statute's coverage, its choices are definitive and any default

4

presumption about the statute's reach is inapplicable. *See Adkins v. Rumsfeld*, 464 F.3d 456, 466 (4th Cir. 2006) ("When Congress has spoken so clearly about the statute's intended reach, the presumption against retroactivity simply does not come into play."); *Moller-Butcher v. U.S. Dep't of Commerce*, 12 F.3d 249, 251 (D.C. Cir. 1994) ("The clarity with which Congress has spoken makes it unnecessary to invoke a presumption of reviewability..."). Thus, Congress has addressed the extraterritorial scope of the FLSA in § 213(f), and the Court need not go further.

However, even if the Court read a presumption against extraterritoriality into the statute as the defendants claim it should, such a presumption

> is not applicable when the conduct regulated by the government occurs within the United States. By definition, an extraterritorial application of a statute involves the regulation of conduct beyond U.S. borders. Even where the significant effects of the regulated conduct are felt outside U.S. borders, the statute itself does not present a problem of extraterritoriality, so long as the conduct which Congress seeks to regulate occurs largely within the United States.

*Environmental Defense Fund, Inc. v. Massey*, 986 F.2d 528, 531 (D.C. Cir. 1993).

Here, the conduct that Congress sought to regulate through the FLSA is the establishment of certain working conditions and the retaliation against employees who enforce their rights under the Act. Plaintiffs were employed in the U.S., and all the facts in the Complaint suggest that defendants' retaliatory acts (i.e., the decision not to rehire and the omission of plaintiffs' names from the list of H-2A workers) occurred in the U.S.

Shannon Produce claims that the alleged retaliatory conduct occurred, as a matter of law, in Mexico "where the applicants were denied re-employment." Doc. # 14-2 at 10. In support of this, it cites to *EEOC v. Bermuda Star Line, Inc.*, 744 F.Supp. 1109, 1111 (M.D.Fla. 1990), for the proposition that "the law of the place where one applies for a job controls in a failure to hire case." Doc. # 14-2 at 10. *Bermuda Star Line* involved a Title VII sex discrimination claim filed by an American who applied to work on a cruise ship that flew a Panamanian flag. 744 F.Supp. at 1110. The defendant corporation was organized under the laws of the Cayman Islands but maintained its principal office and corporate headquarters in the United States. *Id.* The decision not to hire the plaintiff was made from the defendant's United States office. *Id.* Considering those facts and applying principles of maritime law, the court found that extraterritoriality concerns did not bar the plaintiff's Title VII suit. *Id. Bermuda Star Line* did not set forth a rule that the place where one applies for employment controls extraterritorial analysis and the case, therefore, is inapposite to the facts of this case.

The case cited by plaintiffs, *Shekoyan v. Sibley Intern. Corp.*, 217 F.Supp.2d 59 (D.D.C. 2002), is more persuasive. That case involved a Title VII discrimination claim (42 U.S.C. § 2000e-2(a)(1)) and a False Claims Act (FCA) retaliation claim (31 U.S.C. § 3730(h)) brought by an alien who was working abroad for a U.S. employer. *Id.* The court held that principles of extraterritoriality barred the plaintiff's

5

Title VII discrimination claim. *Id.* at 68-69. However, the court did not have such extraterritoriality concerns with respect to the plaintiff's retaliation claim when, after notifying his supervisors in the U.S. of violations of the FCA, plaintiff was subsequently denied reemployment. *Id.* at 71-72. The court concluded that "the genesis of the FCA whistleblower claim is the disclosure of the misappropriation of government funds and the subsequent retaliation for such disclosure, conduct that occurred within the United States." *Id.* at 72. Because the "crux of the inappropriate conduct" occurred in the U.S., extraterritoriality was not an issue. *Id.* at 72, n. 14.

Here, the crux of the conduct that the FLSA seeks to regulate occurred in the U.S. Shannon Produce employed the plaintiffs in the U.S.; the plaintiffs brought their original FLSA lawsuit, which they claim to be the basis of the defendants' retaliation, in the U.S.; and Shannon Produce's alleged decision to retaliate against plaintiffs appears to have been made in the U.S. Therefore, enforcement of this § 215(a)(3) claim does not implicate extraterritoriality concerns even if defendants' retaliation might have had some effect outside the U.S.

C. Reyes-Gaona

Finally, Shannon Produce relies heavily on the Fourth Circuit case *Reyes-Gaona v. North Carolina Growers Ass'n*, 250 F.3d 861 (4th Cir. 2001), where the court held that a Mexican national who submitted an application in Mexico for a job in the U.S. could not sue for employment discrimination under the ADEA. *Id.* Citing extraterritoriality concerns, the court concluded, "The simple submission of a resumé abroad does not confer the right to file an ADEA action." *Id.* at 866. Notably, *Reyes-Gaona* was decided under the post-1984 version of the ADEA which had been amended so that its extraterritorial provision no longer incorporated FLSA § 213(f). *Id.* at 864-865. However, the court discussed the pre-1984 version of the ADEA (which did incorporate FLSA § 213(f)), and noted that there was a presumption that "prevented the ADEA from regulating events taking place in foreign countries even when they involved citizens of the United States. And the Act certainly could not have reached the even more attenuated situation of a foreign national applying in a foreign country for work in the United States." *Id.*

However, plaintiffs' FLSA retaliation claim is different from the ADEA discrimination claim considered in *Reyes-Gaona*. The Fourth Circuit was legitimately concerned that giving ADEA protection to foreign applicants would allow millions of first time foreign job applicants to sue U.S. employers for discrimination. *Id.* at 866 ("Expanding the ADEA to cover millions of foreign nationals who file an overseas application for U.S. employment could potentially increase the number of suits filed and result in substantial litigation costs. If such a step is to be taken, it must be taken via a clear and unambiguous statement from Congress rather than by judicial fiat."). Such concern is simply not present when allowing foreigners with a prior employer/employee relationship in the U.S. to sue for retaliation under the FLSA, because liability under the FLSA is predicated on the existence of an employer/employee relationship. *De Leon-Granados v. Eller & Sons Trees, Inc.*, 581 F.Supp.2d 1295, 1303 (N.D.Ga. 2008); *Glover v. City of N. Charleston*, 942 F.Supp. 243, 246 (D.S.C. 1996) (§ 215(a)(3) does not extend to job applicants who are neither former nor current employees of the retaliating employer). Thus, the universe of

potential foreign litigants to an FLSA retaliation claim is substantially limited. The significance of a prior employment relationship was also emphasized in the *Reyes-Gaona* concurrence which concluded, "Had [the employee] been hired by [the employer], once he began working in this country, the ADEA would have protected him from unlawful employment discrimination." *Id.* at 867 (Motz, J., concurring).

Additionally, in order to state a claim for retaliation, a plaintiff must show that he has filed a complaint or instituted a proceeding under or related to the FLSA. 29 U.S.C. § 215(a)(3). And § 213(f) limits those complaints to employees whose services are performed in a workplace within the U.S. 28 U.S.C. § 213(f). Thus, unlike the situation in *Reyes-Gaona*, in which any foreigner submitting an employment application could attempt to sue under the ADEA for discrimination, Congress has established preconditions to filing retaliation suits that will prevent a flood of meritless litigation from overseas.

### D. Nature of Protected Interest

Finally, Shannon Produce's argument that the plaintiffs cannot bring a retaliation claim under the FLSA because "they had no legally protected interest in re-employment," doc. # 19 at 6, misses the point. Plaintiffs are not asserting that they have a legal right to re-employment. Rather, they assert a right to be free from retaliation for filing suit under the FLSA. *See Darveau v. Detecon, Inc.*, 515 F.3d 334, 342 (4th Cir. 2008) (describing the purpose of the FLSA antiretaliation provision as "preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees"). Whether plaintiffs have a legal interest in re-employment is irrelevant.

### IV. CONCLUSION

Thus, neither §213(f) nor general extraterritoriality principles stand in the way of the plaintiffs' § 215(a)(3) retaliation claim. The plaintiffs do not ask this Court to apply the FLSA to regulate foreign working conditions. The §215(a)(3) cause of action is being invoked as Congress intended – to prevent retaliation for filing a lawsuit to enforce workplace standards in the U.S. Defendants' Motion to Dismiss, doc. # 14, is ***DENIED.*** Defendants' "Motion to Treat Defendants' Motion to Dismiss as Filed on Behalf of All Defendants," doc. # 23, is ***DENIED AS MOOT.***

This day of 16 November 2009

*[signature]*
B. AVANT EDENFIELD, JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA